United States Court of Appeals,

Fifth Circuit.

No. 93-2928.

Regina DIAZ, et al., Plaintiffs,

Regina Diaz, Plaintiff-Appellant,

v.

The METHODIST HOSPITAL, et al., Defendants,

Baylor College of Medicine, et al., Defendants-Appellees.

March 6, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before BARKSDALE and PARKER, Circuit Judges, and COBB, District Judge.[1]

COBB, District Judge:

Appellant, Regina Diaz, brought suit in federal district court alleging that, while in the care of Appellees, she received negligent medical treatment that caused her to become deaf.[2] The

---

[1]District Judge of the Eastern District of Texas, sitting by designation.

[2]This suit was originally filed in 1988 by Regina Diaz and her parents against sixteen different health care providers. Many of these parties were dropped from the suit before the case went to trial in 1993. By the time this case was presented to a jury, Ms. Diaz was the sole plaintiff, and Baylor College of Medicine, Dr. Temple Williams, Dr. Major Bradshaw and Dr. Pedro Frommer (Appellees) were the defendants.

Although formally naming Dr. Victor Rivera, his physician's assistant and Dr. Frommer in this appeal, Appellant fails to specify any error with respect to these appellees in her brief. Accordingly, the court will not entertain an appeal as to these three individuals. *Matter of Texas Mortgage Servs. Corp.*, 761 F.2d 1068, 1073 (5th Cir.1985) ("issues not raised on appeal in the brief of the Appellant may be considered waived, and they cannot be

jury found in favor of Appellees. Appellant's post-trial motion requesting relief from judgment or, in the alternative, a new trial was denied. For the reasons set out below, we AFFIRM the ruling of the district judge.

BACKGROUND

On January 3, 1987, Regina Diaz was severely injured in an automobile accident in her hometown of Merida, Mexico. Ms. Diaz was rushed to a Merida hospital. The doctors there determined that amputation of Ms. Diaz's left leg was necessary to save her life. Despite the treatment she received in Merida, Ms. Diaz's condition worsened over the next 48 hours. Her accident produced life-threatening renal failure and infection.

In an effort to save her life, Ms. Diaz was transported by air ambulance to the Texas Medical Center in Houston, Texas. On arrival, Ms. Diaz was in septic shock with decreased kidney function, and her remaining leg had developed gangrene.

Numerous medications were administered in an effort to regain kidney function and stave off the infection. These medications included several loop diuretics and an aminoglycoside antibiotic, Amikacin. Ms. Diaz's renal function was restored and, although it was necessary to amputate her right leg, she eventually overcame the infection. Unfortunately, the medication which saved her life apparently had a side-effect; Ms. Diaz contends that the antibiotics produced severe bilateral loss of hearing.

On December 23, 1988, Regina Diaz, and her parents, Illeana

_____

noticed or entertained by the Court of Appeals").

Diaz and Rodrigo Diaz, filed suit against Baylor College of Medicine, Methodist Hospital and various physicians. She maintained that these defendants could have prevented her loss of hearing with proper daily monitoring of her blood serum aminoglycoside levels.

Discovery was conducted for almost five years. The parties and numerous medical experts were deposed. The case was tried before a jury from August 9 to August 20, 1993. The jury returned a verdict in favor of the defendants.

On October 4, 1993, before final judgment was entered, Ms. Diaz filed a motion requesting relief from judgment or, alternatively, a new trial.[3] Ms. Diaz based this motion upon newly discovered evidence that, in her opinion, proved Dr. Williams and Dr. Bradshaw had perjured themselves while testifying at the trial.

Throughout their depositions and testimony at trial, Drs. Williams and Bradshaw steadfastly maintained that, in January,

---

[3]Rule 59(a) and 60(b)(3) provide:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action where there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

> Fed.R.Civ.P. 59(a).

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final order or judgment, order or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

> Fed.R.Civ.P. 60(b)(3).

1987, it was impossible to procure laboratory testing for aminoglycoside blood serum levels between Friday evening and Monday morning. Appellant's case turned on whether Appellees' failure to perform weekend monitoring of her blood serum levels was negligent conduct and the proximate cause of her hearing loss. However, Appellant was unable to produce any evidence at trial which contradicted the testimony of Drs. Williams and Bradshaw.

After the jury entered its verdict, Appellant obtained an affidavit from Dr. Edward Talmage. Dr. Talmage stated that, on the dates Appellant was hospitalized, it was possible to order weekend aminoglycoside blood serum testing at Methodist Hospital.[4]

Appellant asserts that Dr. Talmage's affidavit amounts to proof that Drs. Williams and Bradshaw perjured themselves at trial. She maintains that the affidavit is new evidence that demands relief from judgment or, alternatively, a new trial.

The trial court disagreed. On November 19, 1993, the trial court denied Appellant's motion and entered a final judgment reflecting the jury verdict.[5]

---

[4]Dr. Talmage's affidavit states, in relevant part:

> Antibiotic, and more particularly Amikacin and aminoglycoside, serum levels and the results thereof could be obtained on Saturdays and Sundays in January, 1987, by any physician at Methodist Hospital. (Talmage Aff. ¶ 2).

[5]Appellees, Dr. Williams and Dr. Bradshaw, express a concern that this court lacks appellate jurisdiction since Appellant's Rule 59 and 60(b)(3) motions were filed before final judgment was entered. We find that this court has jurisdiction and direct Appellees to *Greater Houston Chapter of the Am. Civil Liberties Union v. Eckels,* 755 F.2d 426, 427 (5th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985), which resolves

4

DISCUSSION

A. MOTION FOR NEW TRIAL

Appellant contends that the trial court committed reversible error when it ignored her "newly discovered evidence," namely Dr. Talmage's affidavit, and denied her motion for a new trial. Pursuant to Rule 59 of the Federal Rules of Civil Procedure, the district court has discretion to grant a new trial on this ground. *Johnston v. Lucas,* 786 F.2d 1254, 1257 (5th Cir.1986). Before we will disturb the trial court's ruling, however, we must find a clear abuse of discretion. *Osburn v. Anchor Laboratories, Inc.,* 825 F.2d 908, 917 (5th Cir.), *cert. denied,* 485 U.S. 1009, 108 S.Ct. 1476, 99 L.Ed.2d 705 (1988); *Johnston,* 786 F.2d at 1257; *LaFever, Inc. v. All-Star Ins. Corp.,* 571 F.2d 1367, 1368 (5th Cir.1978). As this court noted in *Brun-Jacobo v. Pan Am. World Airways, Inc.,* 847 F.2d 242, 244 (5th Cir.1988):

> When the district court denies a motion for new trial, appellate review is especially deferential because in that instance deference to the district court operates in harmony with deference to the jury's determination of the weight of the evidence and the constitutional allocation to the jury of questions of fact.

In deciding whether newly discovered evidence is sufficient to warrant a new trial, the district court should consider whether the evidence: (1) would probably have changed the outcome of the trial; (2) could have been discovered earlier with due diligence; and (3) is merely cumulative or impeaching. *Osburn,* 825 F.2d at 917; *Johnston,* 786 F.2d at 1257; *LaFever,* 571 F.2d at 1368. The

---

this question.

burden is on Appellant to demonstrate that the new evidence clearly weighs in favor of a new trial.

We are unconvinced that Dr. Talmage's affidavit meets any of the requirements listed above.

Dr. Talmage's affidavit, at best, impeaches Drs. Williams' and Bradshaw's testimony that an aminoglycoside blood serum test could not be performed over the weekend. Assuming *arguendo* that this case is retried and Dr. Talmage is allowed to testify, there is no guarantee that the jury will accept his testimony and reject the testimony of Drs. Williams and Bradshaw. Given the state of the evidence, the question of whether aminoglycoside blood serum levels could be tested on a weekend would be a matter for the jury to resolve from its perception of witness credibility.[6]

Appellant is also unable to make a showing that, even with due diligence on her part, Dr. Talmage's testimony would have been unavailable prior to trial. The record indicates that the parties conducted discovery for over five years and took the depositions of numerous expert witness. Appellant maintains that she was not alerted to the possibility that Drs. Williams and Bradshaw were lying until after the trial was concluded. She further indicates

_____

[6]It is important to distinguish this type of impeachment evidence from evidence of a more compelling nature. If Appellant had presented the district court with documentation (hospital records or the like) conclusively establishing that Methodist Hospital routinely conducted weekend aminoglycoside blood serum tests in January, 1987, this element of the test could weigh in favor of granting a new trial. Appellant would still, however, have the burden of proving that (1) even with diligent pre-trial discovery the evidence was unavailable; and (2) that the evidence would probably have changed the outcome of the case.

6

that she had no reason to question the veracity of the statements these doctors gave at deposition and that she accepted their story as true. While cognizant of Appellant's trusting nature, we believe a prudent litigant would independently investigate such a pivotal issue and be less than willing to adopt blindly the statements of the opposing party. Appellant is unable to demonstrate that, had she vigorously pursued this avenue of discovery prior to trial, she would have failed to uncover evidence similar to the statements contained in Dr. Talmage's affidavit. We are unconvinced that Dr. Talmage's affidavit is the type of "new evidence" that a truly diligent litigant would be powerless to unearth given five years of discovery.

Furthermore, Appellant failed to demonstrate that Dr. Talmage's testimony would probably change the outcome of this case. This was a complicated case requiring nearly two weeks of trial and numerous expert witnesses. Several experts testified that the medical treatment administered by Drs. Williams and Bradshaw was appropriate under the circumstances. The trial judge was afforded the opportunity to gage the credibility of these witnesses, a luxury this court does not enjoy. We decline Appellant's invitation to second-guess the trial court. Accordingly, we are unconvinced that the district court abused its discretion when it determined that Dr. Talmage's testimony was not such as would probably change the outcome of this trial.[7]

---

[7]This is especially true since Appellant fails to specify the foundation supporting Dr. Talmage's affidavit. Examination of Dr. Talmage's *curriculum vitae* reveals that he has never been

7

## B. MOTION FOR RELIEF FROM JUDGMENT

Appellant also asserts that the trial court erred by not granting her Rule 60(b)(3) motion for relief from judgment. She reasons that the statements made at trial by Drs. Williams and Bradshaw amount to perjury, making relief under Rule 60(b)(3) appropriate.

"A rule 60(b)(3) assertion must be proved by clear and convincing evidence, and the conduct complained of must be such as to prevent the losing party from fully and fairly presenting its case." *Longden v. Sunderman,* 979 F.2d 1095, 1103 (5th Cir.1992), *citing Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978). The purpose of the rule is to afford parties relief from judgments which are unfairly obtained, not those which may be factually incorrect. *Johnson v. Offshore Exploration, Inc.,* 845 F.2d 1347, 1359 (5th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988).

The decision to relieve a party from final judgment is within the sound discretion of the trial court. *Montgomery v. Hall,* 592 F.2d 278, 279 (5th Cir.1979). We will disturb the district court's decision only for an abuse of discretion. *Johnson,* 845 F.2d at 1359; *Montgomery,* 592 F.2d at 279.

Appellant contends that the deposition and trial testimony of Drs. Williams and Bradshaw, on the issue of whether an

---

on the staff of Methodist Hospital and the affidavit does not indicate whether he, or someone he knows, ever ordered an aminoglycoside blood serum test from Methodist Hospital on or before January 5, 1987.

aminoglycoside blood serum test could be run on a weekend, amounted to perjury. Appellant asserts that Rule 60(b)(3) is in place to ensure that a party can reap no reward for engaging in fraudulent conduct. We agree with Appellant's general statement, but we must examine the record to determine if it is to be applied here.

If unequivocal evidence establishes that a party willfully perjured himself, and thereby prevented the opposition from fully and fairly presenting its case, use of Rule 60(b)(3) to grant the innocent party a new trial would be a proper response. This, however, is not such a case.

Drs. Williams and Bradshaw testified that it was impossible to monitor aminoglycoside blood serum levels on the weekends. In addition, Dr. Edwin M. Ory, Co-Director of the Infectious Diseases Research Laboratory at Methodist Hospital, submitted an affidavit which unequivocally states that weekend lab testing for aminoglycoside blood serum levels was unavailable at Methodist Hospital in January, 1987.[8]

---

[8]Dr. Ory's affidavit states, in relevant part:

> In January, 1987, The Methodist Hospital had not yet decided to offer physicians routine testing of serum aminoglycoside levels. The Infectious Disease Research Laboratory had agreed to do a pilot trial of performing aminoglycoside level testing. This testing was performed once a day by research technicians in the Infectious Disease Research Laboratory on a Monday through Friday basis. Serum samples were delivered to the Infectious Disease Laboratory around noon each day and assays were performed in a batch. Aminoglycoside level determinations could not be done on either a routine or emergency basis after 5 p.m. on weekdays or on weekends.

> (Ory Aff. ¶ 2).

9

Dr. Talmage's affidavit squarely contradicts the assertions of Drs. Ory, Williams and Bradshaw. Dr. Talmage claims that his affidavit is based on personal knowledge. There is no indication, however, as to how Dr. Talmage acquired this personal knowledge. According to his own *curriculum vitae,* Dr. Talmage has never worked in the Methodist Hospital, nor is he a member of its staff. At most, Dr. Talmage's affidavit creates a factual dispute over whether the Methodist Hospital's Infectious Diseases Research Laboratory was capable of performing aminoglycoside blood serum testing on weekends in January, 1987. Appellant's new evidence does not conclusively establish that Drs. Bradshaw and Williams intentionally perjured themselves. As we noted above, Rule 60(b)(3) is not intended to correct those outcomes which may be factually incorrect, but rather to protect against a party prevailing by unfair means. *Johnson,* 845 F.2d 1347.

Even if we accept as true Appellant's assertions of perjury, we would only set aside the decision of the trial court if we found that Appellee's actions foreclosed the possibility that Appellant could "fully and fairly present her case." *Longden,* 979 F.2d at 1103. In the case at hand, Appellant had independent access to information concerning the availability of aminoglycoside testing in January, 1987. Dr. Talmage's affidavit proves that this information was not under the exclusive control of the Appellees. It is likely that a more focused effort by Appellant could have uncovered this evidence prior to trial. When a party is capable of fully and fairly presenting her case notwithstanding "fraud,

10

misrepresentation, or other misconduct," the trial court does not err when it denies a Rule 60(b)(3) motion. *See Rozier v. Ford Motor Co.,* 573 F.2d 1332 (5th Cir.1978) (finding abuse of discretion where the alleged fraud concerned information within the exclusive purview of wrongdoer).

As we noted above, Rule 60(b)(3) is not intended to correct those outcomes which may be factually incorrect, but rather to protect against a party prevailing by unfair means. *Johnson,* 845 F.2d 1347. Appellant has failed to produce clear and convincing evidence in support of her very serious charge of perjury and likewise fails to demonstrate that any perjured testimony prevented her from fully and fairly presenting her case. Accordingly, we find that the trial court did not abuse its discretion when it refused to grant her motion for relief from judgment.

## C. SANCTIONS

Drs. Frommer and Rivera have asked the court for sanctions for a frivolous appeal. Fed.R.App.P. 38. We find it indeed puzzling that Dr. Rivera filed a brief and sought sanctions in this court because he was not cast in judgment. It was therefore unnecessary for his attorney to file any briefs in this court and to attend oral argument. His motion for sanctions is denied based upon this fact which was conceded at oral argument. Dr. Frommer's motion presents slightly different facts. He was cast in judgment, but Appellant failed to raise any issue with respect to him in her brief to this court. Rather than file briefs and attend oral argument, Dr. Frommer would have been well-advised to simply file

11

a motion to dismiss once it became apparent that he was not included in the appeal.  We therefore find that the sanctions sought by Dr. Frommer in defense of Diaz's appeal would be inappropriate, and are denied.

Drs. Bradshaw and Williams also seek Rule 38 sanctions.  This court has noted that a frivolous appeal is one in which "the result is obvious or the arguments of error are wholly without merit." *Buck v. United States,* 967 F.2d 1060, 1062 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 1052, 122 L.Ed.2d 360 (1993) (quoting *Montgomery v. United States,* 933 F.2d 348, 350 (5th Cir.1991)).  While we are not surprised that counsel for Drs. Bradshaw and Williams contend that Ms. Diaz's appeal is "wholly without merit," we find that Appellant's appeal is not so tenuous and unrealistic to warrant this court to award Rule 38 sanctions, and they are denied.

### CONCLUSION

In sum, we hold that a loosely substantiated post-trial charge of perjury is insufficient to form the basis of either a motion for new trial or a motion for relief from judgment.  Accordingly, we AFFIRM the decision of the trial court.

12