United States Court of Appeals,
Fifth Circuit.
No. 94-30297.

GOVERNMENT FINANCIAL SERVICES ONE LIMITED PARTNERSHIP, Plaintiff-Appellee,

v.

PEYTON PLACE, INC. and I-10 Inc. fka Management Equities Corporation, Defendants,

Peyton Place, Inc., Defendant-Appellant.

Sept. 7, 1995.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, EMILIO M. GARZA and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Peyton Place, Inc., appeals from the district court's denial of both its motion for relief from judgment, *see* Fed.R.Civ.P. 60(b), and its motion for a new trial, *see* Fed.R.Civ.P. 59(a). We affirm.

I

At the time of the events underlying this suit, Robert Guastella was President of Management Equities Corp. ("MEC"), now known as I-10, Inc., and a shareholder and employee of Peyton Place, Inc. ("Peyton Place"). MEC executed a promissory note in the amount of $600,000 in favor of Southern Savings Bank ("Southern Savings"). The $600,000 note was secured by a mortgage encumbering a hotel in New Orleans, Louisiana. Ownership of the hotel was subsequently transferred to Peyton Place, which assumed the

1

indebtedness.

Several years after the hotel mortgage was executed, Robert Guastella obtained a loan from Southern Savings in the amount of $114,000, which was secured by a mortgage on his residence, 3721 Rue Chardonnay, in Metairie, Louisiana. Soon thereafter, Peyton Place executed a mortgage encumbering two units of Metairie condominiums known as Peyton Place Condominiums, both of which are owned by Peyton Place.

The Resolution Trust Corporation ("RTC"), during the time it was the receiver for Southern Savings,[1] filed suit in state court against Peyton Place and I-10, seeking to foreclose on the condominium mortgage. The RTC contended that the condominium mortgage was executed as additional security for the $600,000 note, which is past due. Peyton Place contends that the condominium mortgage was executed as additional security for the $114,000 residential loan.

The court presiding over the foreclosure proceedings scheduled a sheriff's sale of the condominiums. Before the sale could take place, however, Peyton Place filed a "Petition for Issuance of an Injunction to Arrest Seizure and Sale under Executory Process," and the RTC removed the matter to federal court.

At the federal district court's hearing on Peyton Place's request for injunctive relief, Peyton Place submitted to the court

---

[1]Government Financial Services One Limited Partnership ("GFS") is currently the receiver for Southern Savings and has been substituted as Plaintiff-Appellee for the purposes of this appeal.

2

a photocopy of the condominium mortgage that is on file in the Jefferson Parish Mortgage Office.[2] On its face, the mortgage stipulates that it secures the $600,000 promissory note assumed by Peyton Place. Peyton Place contended at the hearing that the mortgage had been altered before it was filed, and called several witnesses to testify in support of its assertion.

The district court denied Peyton Place's request for injunctive relief, concluding that Peyton Place "had not sustained their burden on the issue of fraud or lack of authenticity so as to justify setting aside a mortgage which on its face[ ] appeared to be duly prepared, executed, and recorded." Peyton Place filed a "Motion to Supplement, for New Trial and/or for Relief from Judgment," in which it moved for a new trial under Rule 59 of the Federal Rules of Civil Procedure or, in the alternative, relief from the court's judgment under Rule 60(b) of the Federal Rules of Procedure. Peyton Place filed three memoranda in support of its motion.

With the motion, Peyton Place filed a "Memorandum in Support of Motion to Supplement, for New Trial and/or for Relief from Judgment" (the "First Memorandum"), in which it stated that it had obtained three appraisal sketches of 3721 Rue Chardonnay. Peyton Place argued that the court should reconsider its judgment in light

---

[2]Peyton Place claims that it has not been able to find a copy of the condominium mortgage in its own files. Robert Guastella testified at the hearing that he was present at the signing, but that he did not receive a copy at that time. He further testified that he does not know if Peyton Place ever received a copy of the condominium mortgage.

3

of the sketches.

Peyton Place later filed an "Ex Parte Motion to File Supplemental Memorandum and Memorandum in Support" (the "Second Memorandum"), in which it informed the court that it had obtained a copy of a forbearance agreement between Peyton Place and Southern Savings,[3] and that it had discovered that the first page of the condominium mortgage filed in the Jefferson Parish mortgage records is a photocopy.[4] Peyton Place argued that its discovery of the agreement and missing mortgage page provided further reason for the court to reconsider its judgment.

Peyton Place then filed an "Ex Parte Motion to File Second Supplemental Memorandum in Support of Motion for New Trial and/or Relief from Judgment and Memorandum in Support" (the "Third Memorandum"), in which it stated that it had received a letter from Oster & Wegener, Southern Savings' attorneys, and that Oster & Wegener claimed in the letter that all of the documents in their possession concerning the relevant loans and mortgage had been seized by the RTC before the trial. In its Third Memorandum,

_____

[3]In the forbearance agreement, Southern Savings agrees to forbear from foreclosing on the hotel mortgage securing the $600,000 promissory in exchange for the assignment of Peyton Place's proceeds from a contract that Peyton Place had entered into with a third party. Peyton Place contends that the forbearance agreement, which was executed slightly over a month before the condominium mortgage, is evidence that the condominium mortgage was not executed as security for the $600,000 note.

[4]The front and back of the "first page" of the condominium mortgage on file in the mortgage office are the first two pages of the original mortgage, and both sides are photocopies. Both sides of the "second page," the third and fourth pages of the original, are originals.

4

Peyton Place argued that the RTC's failure to produce these documents at trial provided additional grounds for the court to reconsider its judgment.

The district court denied Peyton Place's motion, concluding that it "amount[ed] to little more than an attempt to reargue its case through a new attorney."[5]  Peyton Place appeals the district court's denial, claiming that the court erred in holding that it was not entitled to either a new trial under Rule 59 or relief from the court's judgment under Rule 60(b).[6]

II

Under Federal Rule of Civil Procedure 60(b), a court may relieve a party from a final judgment on the basis of newly discovered evidence, evidence of misconduct on the part of an

---

[5]Peyton Place obtained new counsel after the denial of its request for injunctive relief.

[6]Our caselaw provides some support for the contention that motions brought under Rules 59 and 60(b) are mutually exclusive. For example, we stated in *Goodman v. Lee,* 988 F.2d 619 (5th Cir.1993), that:

> Recognizing that Federal Rules of Civil Procedure 59 and 60 may be used to correct similar errors, this Circuit has established a bright line rule for distinguishing Rule 59 motions from Rule 60 motions. If a motion is served within ten (10) days following the entry of judgment and draws into the question the correctness of the judgment, it will be treated as a Rule 59 motion for purposes of determining the timing of notices of appeal from the judgment.

*Id.* at 623 n. 2;  *accord Prudential-Bache Sec., Inc. v. Fitch,* 966 F.2d 981, 984 (5th Cir.1992).  Because the district court considered both of Peyton Place's asserted grounds for relief, and because neither the RTC nor GFS has argued that we should not, we review both Peyton Place's Rule 59 and Rule 60(b) claims.

5

adverse party, or "any other reason justifying relief from the operation of the judgment."[7] We will reverse a district court's denial of a Rule 60(b) motion only if the court abused its discretion. *First Nationwide Bank v. Summer House Joint Venture,* 902 F.2d 1197, 1200-01 (5th Cir.1990). We apply this deferential standard "to ensure that 60(b) motions do not undermine the requirement of a timely appeal." *Id.* " "[T]o overturn the district court's denial of [a] Rule 60(b) motion, it is not enough that a grant of the motion might have been permissible or warranted; rather, the decision to deny the motion must have been sufficiently unwarranted as to amount to an abuse of discretion.' " *Lancaster v. Presley,* 35 F.3d 229, 231 (5th Cir.1994) (quoting *Fackelman v. Bell,* 564 F.2d 734, 736 (5th Cir.1977)), *cert. denied,* --- U.S. ----, 115 S.Ct. 1380, 131 L.Ed.2d 233 (1995).

A

Peyton Place contends that the district court's denial of its Rule 60(b) motion was erroneous in light of the newly discovered

---

[7]Rule 60(b) provides that a court may:

> relieve a party ... from a final judgment ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b).

evidence. Under Rule 60(b)(2),[8] a court may relieve a party from a final judgment on the basis of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."[9] "To succeed on a motion brought under 60(b)(2) based on newly discovered evidence, the movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) "the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment.' " *New Hampshire Ins. Co. v. Martech USA, Inc.,* 993 F.2d 1195, 1200-01 (5th Cir.1993) (footnote omitted) (quoting *Brown v. Petrolite Corp.,* 965 F.2d 38, 50 (5th Cir.1992)).[10] "The newly discovered evidence must be in existence

---

[8]Although Peyton Place specifically refers only to subsections (3) and (6) as bases for its Rule 60(b) motion, we construe its argument for Rule 60(b) relief on the basis of newly discovered evidence to be a claim under subsection (2). *See Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 356 (5th Cir.1993) (stating that Rule 60(b) should be liberally construed in order to do substantial justice).

[9]Rule 59(b) provides that, under Rule 59, "[a] motion for a new trial shall be served not later than 10 days after the entry of the judgment." Although Peyton Place filed a Rule 59 motion for a new trial along with its motion for relief from judgment under Rule 60(b), Peyton Place does not base its Rule 60(b)(2) claim on evidence that it obtained within ten days after the entry of judgment. Ten days after entry of judgment, Peyton Place had only filed its First Memorandum in support of its Rule 59 motion. The First Memorandum mentions only the discovery of the appraisal sketches, which have not been mentioned since. The evidence on which Peyton Place bases its Rule 60(b)(2) motion was presented in the Second Memorandum and Third Memorandum, which were filed more than ten days after the entry of judgment.

[10]*See Chilson v. Metropolitan Transit Auth.,* 796 F.2d 69, 72 (5th Cir.1986) (" "[T]he movant must show that the evidence was discovered following the trial, that he used due diligence to discover the evidence at the time of the trial, that the evidence is not merely cumulative nor impeaching, that it is material, and

at the time of trial and not discovered until after trial." *Longden v. Sunderman,* 979 F.2d 1095, 1102-03 (5th Cir.1992).

In its Third Memorandum, Peyton Place provided a "summary of the new evidence obtained by Peyton Place, Inc. since the trial," listing: (1) "The fact that the first page (front and back) of the condominium mortgage in the Jefferson Parish mortgage records is a photocopy, while the last page is an original;" (2) "The Assignment of Proceeds of Contract in which Southern Savings agreed to forbear from foreclosure over a month before the condominium mortgage was, according to the R.T.C./Southern Savings, executed in order to obtain forbearance;" and (3) "The response from Oster & Wegener that the R.T.C. seized all of the Oster & Wegener files in [D]ecember 1990 or January 1991, including the files relating to the $114,000 loan and the condominium mortgage."[11]

Peyton Place all but concedes that the fact that the first page of the condominium mortgage in the Jefferson Parish mortgage records is a photocopy is not newly discovered evidence, stating in its brief on appeal that "the physical evidence of alteration on the first page of the mortgage is not newly discovered evidence, but evidence that was already entered into evidence at trial." Although the fact that the first page of the recorded mortgage is

_____

that a new trial in which the evidence was introduced would probably produce a different result.' " (quoting *Johnson Waste Materials v. Marshall,* 611 F.2d 593, 597 (5th Cir.1980)).

[11]Peyton Place did not include the appraisal sketches discussed in its First Memorandum in its Third Memorandum's list of "evidence obtained since trial." Because Peyton Place does not mention the sketches in its brief on appeal, we do not consider them as a basis for its 60(b)(2) claim.

8

a photocopy was not mentioned at trial, evidence at trial showed that Peyton Place did have access to the document.[12] Peyton Place did not contend in its memoranda in support of its Rule 60(b)(2) motion or in its brief on appeal that it did not have access to the document either before or during the trial. Therefore, we conclude that Peyton Place failed to demonstrate to the district court that it could not have obtained the information before or during the trial even if it had exercised due diligence. *See Longden,* 979 F.2d at 1103 (affirming denial of Rule 60(b)(2) motion in part because movant did not show due diligence).

Peyton Place contends on appeal that the "Assignment of Proceeds of Contract and the forbearance agreement referred to in it were not found until after the trial and judgment." However, in its Second Memorandum, Peyton Place stated that it obtained a copy of the assignment of proceeds of contract containing the forbearance agreement "from the records of Jefferson Parish." Peyton Place has never contended that it did not have access to this document either before or during the trial. Therefore, we conclude that Peyton Place failed to demonstrate to the district court that it could not have obtained a copy of the contract and agreement contained therein before or during the trial even if it had exercised due diligence. *See id.*

---

[12]When asked about the condominium mortgage at trial, Robert Guastella testified that he, Charles Kovacs, and Donald Guastella "went down to the Mortgage Office" and "[t]hat's when we found it." When asked about the condominium mortgage, Donald Guastella testified that: "I saw it across the river in the Mortgage Office [in Gretna]."

Peyton Place contends on appeal that:  "The fact that the Oster & Wegener files were seized by the R.T.C. years before trial was not discovered until after trial."  However, in its Third Memorandum, Peyton Place describes how it obtained this information, stating:  "Peyton Place, Inc. served a subpoena duces tecum on the law firm of Oster & Wegener for its files concerning the $114,000 loan from Southern Savings Bank to Robert Guastella and for the "duplicate original' and other documents relating to the Peyton Place condominium mortgage."  In response to the subpoena, Peyton Place notes, Oster & Wegener sent a letter stating:  " "In response to the Subpoena issued by you ... please be advised that all of the documents requested were seized by the Resolution Trust Corporation in December of 1990 or January 1991....  If any of the alleged documents exist, it would be in the possession of the R.T.C.' "   (ellipses in Third Memorandum). Peyton Place has never contended that it could not have obtained this information either before or during the trial.  Therefore, we conclude that Peyton Place failed to demonstrate to the district court that it could not have obtained the information before or during the trial even if it had exercised due diligence, and hold that the district court did not abuse its discretion in refusing to grant Peyton Place's Rule 60(b)(2) motion.  *See id.*

B

Peyton Place next contends that the district court's denial of its Rule 60(b) motion was erroneous in light of the evidence of the RTC's misconduct.  Under Rule 60(b)(3), "A party making a Rule

10

60(b)(3) motion must "establish by clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct and (2) that this misconduct prevented the moving party from fully and fairly presenting his case.' " *Washington v. Patlis,* 916 F.2d 1036, 1039 (5th Cir.1990) (quoting *Montgomery v. Hall,* 592 F.2d 278, 278-79 (5th Cir.1979)); *accord Diaz v. Methodist Hosp.,* 46 F.3d 492, 496 (5th Cir.1995). "The purpose of the rule is to afford parties relief from judgments which are unfairly obtained, not those which may be factually incorrect." *Diaz,* 46 F.3d at 496; *accord Johnson v. Offshore Exploration, Inc.,* 845 F.2d 1347, 1359 (5th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988).

Peyton Place argues that the "R.T.C.'s failure to produce critical documents is sufficient misconduct to require relief from the judgment under Rule 60(b)(3)." In its brief on appeal, Peyton Place claims: (1) "The R.T.C. did not produce a *single* document from the Oster & Wegener files," which it contends "must" contain a copy of the condominium mortgage, "likely" contain a duplicate original of the mortgage, and "in all likelihood" contain "some communication or memo or notes ... concerning the purpose or intent of the condominium loan;" (2) "[T]he R.T.C. failed to produce the Southern Savings condominium file," speculating that "[s]urely, there must have been a copy of the condominium mortgage in the files of Southern Savings files [sic], or at least one document dealing with the condominium mortgage;" and (3) "The R.T.C. failed to produce or disclose the forbearance agreement or the Assignment

11

of Proceeds of Contract referring to the forbearance agreement," opining that "it is not credible" that Southern Savings and Oster & Wegener's files did not contain a copy.

"Our cases have held that a party may engage in rule 60(b)(3) misconduct if he fails to disclose evidence he knows about and the production of such evidence was clearly called for "by any fair reading' of the discovery order." *Montgomery,* 592 F.2d at 279 (quoting *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1341 (5th Cir.1978)). Even if we assume that Peyton Place clearly asked the RTC for all the documents on which it bases its Rule 60(b)(3) claim,[13] Peyton Place did not provide the district court with "clear and convincing evidence" that the RTC engaged in any misconduct concerning those documents because it did not show by clear and convincing evidence that the RTC has ever had the documents in its possession. As support for its claim, Peyton Place relied solely on the letter it received from Oster & Wegener, which merely states that all documents concerning Southern Savings that were in the law firm's possession were seized by the RTC and that "[i]f any of the alleged documents exists, it would be in the possession of the R.T.C." Because Peyton Place did not provide the district court with clear and convincing evidence that any of these documents have ever been in the RTC's possession, its Rule 60(b)(3) claim with

---

[13]We note that Robert Guastella did not testify that Peyton Place subpoenaed Oster & Wegener's files; indeed, Peyton Place contends on appeal that it did not learn that the RTC had seized those files until after the district court entered its judgment. *See Montgomery,* 592 F.2d at 279 (rejecting 60(b)(3) claim because discovery order could not fairly be read to require disclosure of evidence).

respect to the documents fails. *Compare Rozier,* 573 F.2d at 1341-42 (reversing district court's denial of appellant's Rule 60(b)(3) claim based on affidavit showing that appellee knew that it had requested document in its possession but failed to produce it).

Even if Peyton Place had shown that the RTC possessed an original duplicate of the mortgage, a photocopy of the mortgage, or any other document it hypothesizes might have been seized by the RTC, Peyton Place did not provide the district court with clear and convincing evidence that the RTC's failure to produce any of these documents prevented it from fully and fairly presenting its case. *See Washington,* 916 F.2d at 1039 (requiring that movant support Rule 60(b)(3) motion based on misconduct with clear and convincing evidence that misconduct prevented movant from fully and fairly presenting its case). Peyton Place can only speculate that an original duplicate or additional copy of the mortgage would have supported its claims. Similarly, it can only suggest that any communication, memo, or notes regarding the purpose or intent of the condominium loan that might have been in the RTC's possession would bolster its argument. Peyton Place can establish by clear and convincing evidence the contents of the forbearance agreement, but it cannot argue that the RTC's failure to produce this document prevented Peyton Place from fully and fairly presenting its case because this document was available to Peyton Place at trial. *See supra* part II.A.; *see also Diaz,* 46 F.3d at 497 (affirming Rule 60(b)(3) denial because appellant had "independent access" to information allegedly withheld from her, information was not "under

13

the exclusive control of the Appellees," and it was "likely that a more focused effort by Appellant could have uncovered th[e] evidence prior to trial"). Therefore, we conclude that Peyton Place's Rule 60(b)(3) claim also fails, and hold that the district court did not abuse its discretion in refusing to grant Peyton Place's Rule 60(b)(3) motion.

C

Lastly, Peyton Place contends that it is entitled to relief from the district court's judgment under Rule 60(b)(6), which provides that a court may grant such relief for "any other reason justifying relief from the operation of the judgment." Section (b)(6)'s "any other reason" language refers to any reason other than those contained in the five enumerated grounds on which a court may grant a Rule 60(b) motion. *Klapprott v. United States,* 335 U.S. 601, 614-15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949); *Wilson v. Johns-Manville Sales Corp.,* 873 F.2d 869, 872 (5th Cir.), *cert. denied,* 493 U.S. 977, 110 S.Ct. 504, 107 L.Ed.2d 506 (1989). "Rule 60(b)(6) "is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses.' " *Harrell v. DCS Equip. Leasing Corp.,* 951 F.2d 1453 (5th Cir.1992) (quoting). "Relief under this section is granted "only if extraordinary circumstances are present.' " *American Totalisator Co. v. Fair Grounds Corp.,* 3 F.3d 810, 815-16 (5th Cir.1993) (quoting *Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 851 (5th Cir.1990)).

Peyton Place contends that the district court erroneously

14

refused to exercise its equitable powers under Rule 60(b)(6) to consider "[t]he evidence obtained after the trial and judgment (the photocopied first page in the mortgage records, the R.T.C.'s seizure of the Oster & Wegener files, and the Assignment of Proceeds of Contract referring to the forbearance agreement)." Peyton Place claims in its brief on appeal that (1) it would be "unconscionable" to enforce an obviously altered mortgage, (2) "if it was a lack of due diligence for Peyton Place to [fail to] check the mortgage records before trial, it was an equal lack of due diligence for the R.T.C. not to check the mortgage records before filing the petition for foreclosure," and (3) the inequity of enforcing an obviously altered mortgage outweighs the inequity of granting Peyton Place relief from the judgment based on evidence that it could have obtained and presented to the district court at trial had it exercised due diligence.

Even if we assume what Peyton Place fails to argue, that Peyton Place has stated a Rule 60(b)(6) claim distinct from its Rule 60(b)(2) and (b)(3) claims, its Rule 60(b)(6) claim fails because we have expressly held that a district court's equitable powers under section (b)(6) do not extend to considering evidence that could have been presented at trial. "This clause of the Rule provides "a grand reservoir of equitable power to do justice in a particular case,' but that well is not tapped by a request to present evidence that could have been discovered and presented at trial through the exercise of due diligence." *United States v. 329.73 Acres of Land, More or Less,* 695 F.2d 922, 926 (5th

15

Cir.1983) (quoting). Had it exercised due diligence, Peyton Place could have discovered and presented at trial the photocopied first page in the mortgage records, the RTC's seizure of the Oster & Wegener files, and the assignment of proceeds of contract referring to the forbearance agreement. *See supra* part II.A. Therefore, the district court did not abuse its discretion in refusing to grant Peyton Place's Rule 60(b)(6) motion. *See 329.73 Acres of Land,* 695 F.2d at 926 (affirming denial of Rule 60(b)(6) motion based on evidence presented after judgment because evidence could have been presented before judgment through the exercise of due diligence).[14]

III

Peyton Place also contends that the district court erred in denying its Rule 59 motion for a new trial. The district court has discretion to grant a new trial under Rule 59(a) of the Federal Rules of Civil Procedure when it is necessary to do so "to prevent an injustice." *United States v. Flores,* 981 F.2d 231, 237 (5th Cir.1993) (quoting *Delta Eng'g Corp. v. Scott,* 322 F.2d 11, 15-16 (5th Cir.1963), *cert. denied,* 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964)). The district court's decision to grant or deny a Rule 59(a) motion will be reversed only for an abuse of discretion. *Flores,* 981 F.2d at 237; *Treadaway v. Societe Anonyme Louis-Dreyfus,* 894 F.2d 161, 164 (5th Cir.1990).

"Ordinarily, a district court's decision not to grant a new

---

[14]In rejecting the Rule 60(b)(6) claim, the court in *329.73 Acres of Land* noted that the movants "seek to reopen a trial to make proof from which their claim of obvious error springs." *Id.* at 926. The court emphasized that "Rule 60(b) does not allow such supplementary trials." *Id.*

16

trial under Rule 59(a) is not appealable." *Youmans v. Simon,* 791 F.2d 341, 349 (5th Cir.1986); *accord State Nat'l Bank v. United States,* 488 F.2d 890, 893 (5th Cir.1974); 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2818 (1995) (citing *Youmans* and *State Nat'l Bank* ). "An appeal of the denial of a Rule 59(a) motion for a new trial merely restates the attack on the merits of the final judgment. It is from the final judgment that the appeal should be taken." *Youmans,* 791 F.2d at 349 (citing *Urti v. Transp. Commercial Corp.,* 479 F.2d 766, 769 (5th Cir.1973)). "The only exception to this rule is when "new matters arise after the entry of the judgment.' " *Id.*

Peyton Place argues the same grounds for its Rule 59(a) motion as it did for its Rule 60(b)(2) motion, that the district court erred in not granting a new trial based on the evidence it listed in its Third Memorandum as "new evidence obtained by Peyton Place, Inc. since the trial." We have held that the denial of a motion for a new trial on the ground of newly discovered evidence is itself appealable. *Fallen v. United States,* 249 F.2d 94, 95 (5th Cir.1957); *see also* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2818 (1995) (citing *Fallen* ). However, to prevail on a Rule 59(a) claim based on newly discovered evidence, the movant must have been excusably ignorant of the facts at the time of the trial despite due diligence to learn about them. *See Owens v. International Paper Co.,* 528 F.2d 606, 611 (5th Cir.1976) (affirming denial of Rule 59(a) motion based on newly discovered evidence because movants failed to make

17

requisite showings that they were inexcusably ignorant of evidence until after trial and had employed reasonable diligence to obtain it). Having determined that Peyton Place did not adequately demonstrate to the district court that it could not have discovered the evidence forming the basis for its Rule 60(b)(2) motion before or during trial even if it had exercised due diligence, *see* part II.A., we conclude that Peyton Place could not prevail on its Rule 59(a) claim based on the same evidence. Therefore, we hold that the district court did not abuse its discretion in refusing to grant Peyton Place's Rule 59(a) motion for a new trial. *See Owens*, 528 F.2d at 611 (affirming denial of Rule 59(a) motion because movants had not demonstrated that motion was based on evidence that they "had employed reasonable diligence to ascertain" before trial).

## IV

For the foregoing reasons, we AFFIRM the district court's denial of Peyton Place's Rule 60(b) motion and Rule 59(a) motion.