# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 1, 2010

No. 10-30001
Summary Calendar

Lyle W. Cayce
Clerk

RITA M. ALLAIRE; DON C. RICHARDSON,

Plaintiffs-Appellees,

versus

MARIA VAN NIFTRIK BENTON,

Defendant-
Third Party Plaintiff-
Appellant,

versus

HAROLD BUTCHART,

Third Party Defendant-
Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:02-CV-475

No. 10-30001

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Maria Benton appeals a judgment ordering her to pay plaintiffs Rita Allaire and Don C. Richardson on a promissory note. Benton also appeals the denial of her motions for new trial and relief from judgment. Because none of Benton's arguments has merit, we affirm.


I.

Plaintiffs claim the benefits of a mortgage promissory note executed by Benton and payable to them for $85,000 plus interest. The loan was one aspect of a larger real estate deal in which Benton purchased a commercial property using the $85,000 loan, the proceeds of the simulated sale of her house, a bank loan, and her personal funds.

In 2002, plaintiffs sued on the note, alleging that Benton had failed to pay since 1999. Benton responded by arguing that she did not sign the note and, even if she did, she was incompetent because of an alleged brain injury.

Benton filed a counterclaim against the plaintiffs and a third-party demand against Harold Butchart. In her counterclaim and third-party demand, Benton alleged that (1) plaintiffs were her financial advisors after she suffered the brain injury; (2) plaintiffs breached their fiduciary duty to her by advising her to purchase property she could not afford; (3) plaintiffs advised her to sell her house to Butchart; (4) Butchart purchased the house for less than it was worth; (5) part of the money the plaintiffs seek to recover was loaned by them to Butchart; and (6) as a consequence of the actions of the plaintiffs and Butchart,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30001

Benton lost her house and wound up with a heavily mortgaged piece of commercial property.

Following a bench trial in which Benton appeared *pro se*, the district court found Benton liable for the balance due on the promissory note, plus interest and attorneys' fees, for a final sum of $158,820.15. The court dismissed Benton's counterclaim and third-party demand.

Benton moved for a new trial under Federal Rule of Civil Procedure 59(a) and a motion for relief from judgment under rule 60(b). The district court denied both. Benton appeals the judgment and the denial of her motions.

II.

On appeal from a bench trial, we review conclusions of law and mixed questions of fact and law *de novo*, *Am. Int'l Specialty Lines Ins. Co. v. Res-Care, Inc.*, 529 F.3d 649, 656 (5th Cir. 2008) (citation omitted); findings of fact for clear error, *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294 (5th Cir. 2009) (citation omitted); and evidentiary rulings for abuse of discretion, *Abner v. Kansas City S.R.R. Co.*, 513 F.3d 154, 168 (5th Cir. 2008). If, however, "the complaining party failed to object [to the evidentiary ruling] at trial, we review only for plain error." *United States v. Thompson*, 454 F.3d 459, 464 (5th Cir. 2006). The denial of a rule 60(b) motion is reviewed for an abuse of discretion. *Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 744 (5th Cir. 2009).

Ordinarily, this court will not review the denial of a rule 59(a) motion for a new trial. *Youmans v. Simon*, 791 F.2d 341, 349 (5th Cir. 1986). That is because an appeal from a denial of a new trial "merely restates the attack on the merits of the final judgment. It is from the final judgment that the appeal should be taken." *Gov't Fin. Servs. v. Peyton Place*, 62 F.3d 767, 774 (5th Cir. 1995) (citation omitted). We will review the decision not to grant a new trial only where "new matters arise after the entry of the judgment." *Id.* Because there

No. 10-30001

are no such new matters here, we review only the judgment and the denial of the rule 60(b) motion.

III.

Benton raises seven substantive arguments in her appeal. They are all unpersuasive.

A.

Benton incorrectly claims that the district court failed to credit her repeated denial of signing the promissory note. The court did consider Benton's testimony but found plaintiffs' countervailing testimony more "compelling and credible." R. 1964. Both plaintiffs provided consistent and detailed testimony that they were familiar with Benton's signature, recognized it on the note, and had personally witnessed her sign it. *Id.* The credibility decision is for the district court, and we have no reason to disturb it. *See United States v. Turner*, 319 F.3d 716, 720-21 (5th Cir. 2003).

The district court also noted that Benton made payments of $12,155.48 toward the balance of the loan, a voluntary performance that constitutes tacit confirmation of the contract. R. 1964. Thus, even if the court had erroneously credited plaintiffs' testimony over Benton's, the error was harmless. Benton raises no arguments on appeal that directly contradict this conclusion.

Finally, even if the court did err in concluding that Benton had signed the note and engaged in voluntary performance, the errors are harmless, because Benton would still be obligated to repay the loan under a theory of unjust enrichment. Under Louisiana law, a claim for unjust enrichment is established where there is (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and resulting impoverishment; (4) an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) no other remedy at law

4

No. 10-30001

available to the plaintiff. *Finova Capital Corp. v. IT Corp.*, 774 So. 2d 1129, 1132 (La. App. 2d Cir. 2000). Based on the trial testimony, the district court found that all five requirements for unjust enrichment were satisfied, so Benton is liable for the balance on the note.

### B.

Benton contests the district court's conclusion that she was cognitively competent when she signed the note. In Louisiana, it is presumed that all parties have the capacity to contract. *See* LA. CIV. CODE ANN. art. 1918. Lack of capacity, as a defense, must be shown by clear and convincing evidence. *Florida v. Stokes*, 944 So. 2d 598, 603 (La. App. 1st Cir. 2006). "Where doubt exists as to the showing of an exception, the presumed capacity to contract prevails." *First Nat'l Bank v. Williams*, 346 So. 2d 257, 264 (La. App. 3d Cir. 1977).

On her defense of lack of capacity, Benton proffered a neuropsychologist, Roberta Bell, who testified that Benton displayed a disparity between certain neurological functions, such as abstract reasoning and memory formation, and her otherwise above-average intellect. R. 1965. Bell linked that disparity to a previously suffered brain injury and concluded that it was "more probable than not that that injury resulted in decreased ability to make decisions and judgments in a manner that is in her best interest, and an inability to adequately comprehend and encode written information in memory, in order to make such decisions." App. [not paginated].

As the district court noted, however, Bell's statement does not provide clear and convincing evidence that Benton lacked capacity to enter into a contract. The testimony merely suggests that Benton probably faced an increased difficulty when entering into a contract; it does not show, by clear and convincing evidence, that the difficulty rose to the level of incapacity. Not only is the standard offered by Bell insufficient––because "more probable than not" is not the

5

No. 10-30001

equivalent of "clear and convincing"––but Bell's final conclusion is insufficient to deem Benton legally incapable of consenting to the contract, even if clear and convincing evidence were offered to support that conclusion.

Moreover, though Bell testified that Benton might have difficulty fully comprehending complex decisions or documents, Bell qualified that statement by stating that the difficulty could be mitigated if Benton was familiar with those types of documents. Indeed, Benton possessed a history of engaging in various transactions, including large-scale commercial purchases, real estate transactions, and other loans, after the date of her alleged brain injury. She was familiar with the types of documents at issue––a familiarity that further diminished the possibility that she lacked capacity to consent to the contract. Finally, even if, *arguendo*, the district court did err in concluding that Benton had the capacity to consent, the error was harmless, because she would still be obligated to repay the loan under a theory of unjust enrichment, as explained above.

## C.

Benton maintains that her consent to the contract was vitiated by fraud on the part of the plaintiffs. Louisiana law defines fraud as "a misrepresentation or a suppression of truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other [, and] [f]raud may result from silence or inaction." LA. CIV. CODE ANN. art. 1953. Benton claims that the plaintiffs orchestrated the larger real estate transaction, of which the promissory note was a small part, with the intent to defraud Benton for their own profit. The district court disagreed, finding that there was no evidence in the record to support Benton's allegations.

On appeal, Benton has not cited any relevant evidence, besides her own conjectures and conclusional statements, to cast doubt on the finding of no fraud. Much of the evidence she offers relates not to the principal transaction on which

this claim arose but more generally to her belief that the plaintiffs are the types of individuals who have the propensity to commit fraud and have done so in the past.  The most charitable reading we can prescribe to Benton's argument for fraud is based solely on her own testimony, which the district court did not find credible in light of the plaintiffs' countervailing testimony and the absence of corroborating evidence.  Again, it is not our role to second-guess legitimate credibility determinations made by a trial court.  *See Turner*, 319 F.3d at 720-21.  Thus, even with a liberal construction of Benton's claims, there is no merit to her argument.

D.

Benton contends that the district court erred by not affording her the opportunity to testify as to every exhibit that she proffered.  During trial, the court took several exhibits under submission and informed Benton that they would be taken into account during the court's deliberations, as is customary in bench trials.  R. 2590-91.  Accordingly, the court did not allow additional testimony regarding some of those exhibits but did allow Benton the chance to file a memorandum if she wished to point out any specific information contained in them.  R. 2972.  Benton did not object to that decision during trial, so we review it only for plain error.  *See Thompson*, 454 F.3d at 464.

Benton does not deny that the district court considered the exhibits before ruling; rather, she argues that just "considering" the exhibits without the assistance of her trial testimony was insufficient to understand fully the claims she was making.  Benton lists in her brief what information she would have testified to regarding some of the exhibits that were admitted.

There are at least two problems with Benton's presentation.  First, she did file a post-trial memorandum in which she imparted substantially the same information regarding the submitted exhibits that she now argues should have

been part of her trial testimony. R. 1398-1452. Thus, the court considered that information. Second, all of the additional information that Benton claims she would have imparted in her testimony, and that was not already discussed in her post-trial memorandum, are either irrelevant to the claims at issue or are merely a restatement of her conclusional assertions of fraud. Disallowing this type of testimony on exhibits already taken under submission is not error, much less plain error.

## E.

In her opening brief, Benton alleges that the district court failed to apprise her of the consequences of not testifying regarding some of her trial exhibits. She argues that that failure affected her substantial rights and is plain error under Federal Rule of Civil Procedure 61 because it seriously affected the fairness and integrity of the judicial proceedings.

Benton does not expand any further on the alleged failure to warn. It is frivolous on its face. Even assuming that there were negative consequences from Benton's not providing testimony on some her trial exhibits––which, as explained in part III.D above, there were not––a trial court owes no duty to warn a litigant, *pro se* or otherwise, of the strategic consequences of an evidentiary ruling. Though we construe the arguments of *pro se* appellants liberally, there is no construction we can offer to create a rational argument from this claim. (We also note that rule 61, on which Benton relies, speaks to harmless error, not plain error.)

## F.

Benton claims that the district court erred in refusing to allow a witness to testify for her via telephone. During trial, Benton made a proffer as to what the witness's testimony would be if he were called. R. 1374. Benton wanted the

witness to testify to prior dealings with the plaintiffs and to attest that, in his opinion, plaintiffs had committed fraud against him. R. 2870-2874. Instead of allowing the phone testimony, the court advised Benton that her proffer was sufficient and that the court would take that information into account when rendering a decision. R. 2874. Specific details regarding the witness's interactions with the plaintiffs, none of which had any relationship to the financial transactions between Benton and the plaintiffs, were properly deemed unnecessary in light of the court's acceptance of Benton's proffer. The court did not abuse its discretion by merely accepting the proffer, especially given that Benton does not point to any additional, relevant information that would have been imparted through trial testimony.

## G.

Benton urges that the district court erred in failing to grant her motion for relief from final judgment under rule 60(b). Before the district court, Benton formally based her motion on rule 60(b)(1), (2), (3), and (6). On appeal, however, she relies only on rule 60(b)(3), so we limit our discussion to it.

Rule 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." The evidence of fraud that Benton offers in her rule 60(b)(3) argument is the same evidence she presented for fraud on the merits, which we addressed and dismissed in part III.C above. For those same reasons, Benton's claim that the court should have granted her rule 60(b)(6) motion is without merit.

AFFIRMED.