IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 94-60606

_____

MYRON BATTS,

Plaintiff-Appellee,

versus

TOW-MOTOR FORKLIFT COMPANY and
CATERPILLAR, INC.,

Defendants,

CATERPILLAR, INC.,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi

(October 3, 1995)

Before JOLLY and BENAVIDES, Circuit Judges, and FITZWATER, District Judge.[*]

FITZWATER, District Judge:

We are asked to decide in this Erie[1] case whether a change in state decisional law--in this instance, Mississippi's conversion from the "consumer expectations" to the "risk-utility" test in products liability actions--constituted an extraordinary circumstance that vested the district court with discretion to grant Fed. R. Civ. P. 60(b)(6) relief. Because we hold that it did not, we reverse.

I

The relevant background facts are set out in our prior opinion in this case, see Batts v. Tow-Motor Forklift Co., 978 F.2d 1386, 1387-88 (5th Cir. 1992) ("Batts I"), and in the district court's

_____

[*]District Judge of the Northern District of Texas, sitting by designation.

[1]Erie R.R. Co v. Tompkins, 304 U.S. 64 (1938).

decision below. See Batts v. Tow-Motor Forklift Co., 153 F.R.D. 103, 104-05 (N.D. Miss. 1994) ("Batts II"). We therefore recount them only briefly, adding subsequent procedural facts that necessarily were not set out in those opinions.

In 1984 plaintiff-appellee Myron Batts ("Batts") was injured when a coworker using a forklift collided with Batts. Batts I, 978 F.2d at 1388. The coworker hit Batts as he was operating a "tugger"--a type of motorized forklift that a person walks behind and guides--as the coworker was operating his forklift in reverse, but without sounding the equipment's manual horn. Id. at 1387-88. The forklift was generally maneuvered equally in reverse and in forward. Id. at 1387.

In 1988 Batts brought a diversity action against defendant Tow-Motor Forklift Company, the manufacturer of the forklift, and its successor-in-interest, defendant-appellant Caterpillar Industrial, Inc. ("Caterpillar"), alleging inter alia theories of negligence and strict liability. Id. at 1388. The case was tried in March 1991. Batts II, 153 F.R.D. at 104. Batts introduced evidence at trial to prove that the forklift should have been equipped with a back-up alarm, flashing warning lights, and/or rearview mirrors, and that this failure entitled him to recover on the basis of strict liability (defective and unreasonably dangerous product) or negligence (negligent design). Batts I, 978 F.2d at 1388. Caterpillar presented evidence that there was no restriction on the operator's visibility to the rear, and that there was a danger in the operator's relying on alarms, lights, or mirrors rather than simply looking in the direction of travel. Id.

One of Caterpillar's principal defenses was that the absence of the devices on which Batts relied to establish liability, coupled with the danger of the forklift operator's not facing the direction of travel, was open and obvious to the forklift owner (Batts' employer) and to users (the employee operators), thus barring recovery by Batts under Mississippi law. Id.; see Batts II, 153 F.R.D. at 104 ("To this end, such open and obvious danger was a complete bar to recovery under Mississippi law."). Over Batts' objection, the trial court instructed the jury on Caterpillar's "open and obvious" defense, Batts II, 153 F.R.D. at 104-05, charging the jury that an open and obvious danger could not render the product unreasonably dangerous. Batts I, 978 F.2d at 1391. The court also directed the

jury to find whether the defect was open and obvious to a reasonable and prudent user, and instructed the jury that if it so found, it was to render a verdict in favor of Caterpillar. Id. at 1392. The jury returned a verdict for Caterpillar.

Following denial of his post-verdict motions, Batts appealed to this court and moved the court to stay the appeal pending the Mississippi Supreme Court's expected decision in Sperry-New Holland v. Prestage, 617 So.2d 248 (Miss. 1993), an unrelated and as yet undecided case then pending before that court. A panel of this court denied the motion in June 1991. We later affirmed the judgment in favor of Caterpillar. Batts I, 978 F.2d at 1397. We filed our opinion on November 25, 1992, and denied a petition for rehearing and rehearing en banc on December 23, 1992. Our mandate issued on January 4, 1993.

In 1991, when the case was tried, and in 1992, when we decided Batts' appeal, we understood Mississippi to follow the consumer expectations rather than risk-utility test in strict liability actions. See id. at 1392; Melton v. Deere & Co., 887 F.2d 1241, 1243 (5th Cir. 1989).[2] In Batts I we noted that "our court has held . . . that there is no strict liability in tort under Mississippi law for a patent-- open and obvious--danger." Batts I, 978 F.2d at 1392. Batts conceded that our decisions "support[ed] Caterpillar's contention that the consumer expectation test applies, as opposed to a risk utility analysis." Id. (footnote omitted). He urged, however, that we had misinterpreted Mississippi law. Id. at 1392-93. We disagreed with Batts' analysis, holding that the cases on which he relied "do not persuade us that Mississippi has fundamentally shifted its test from one of consumer expectation to risk utility." Id. We also held that even if we agreed with Batts, we were still bound by the prior panel opinion in Melton. Id. & n. 15. We declined to certify the issue to the Mississippi Supreme Court, noting that "[o]ur law is clear" and that "the Mississippi law upon which our precedent is based is unchanged." Id. at n. 16.

---

[2]Judge Reavley disagreed with this circuit's interpretation of Mississippi law. See Melton, 887 F.2d at 1246-48 (Reavley, J., dissenting) (urging that Mississippi does not apply "consumer expectations" test to determine whether product design is defective); Satcher v. Honda Motor Co., 52 F.3d 1311, 1314 n.2 (5th Cir. 1995) (Reavley, J.). Our more recent opinions recognize the change to risk-utility analysis. See, e.g., Williams v. Briggs Co., 62 F.3d 703, 705 (5th Cir.1995).

On March 25, 1993--subsequent to issuance of our mandate on January 4, 1993--the Mississippi Supreme Court filed its opinion in Prestage, holding that Mississippi applied the risk-utility test of products liability, and that it had done so since 1988. Prestage, 617 So.2d at 252, 254-55. Prestage involved a suit for injuries caused when the plaintiff's leg was caught in a combine manufactured by Sperry-New Holland, requiring amputation of the lower portion of the plaintiff's leg. Prestage sued Sperry-New Holland on strict liability and negligent design theories. The trial court instructed the jury using risk-utility analysis, and it returned a verdict for the plaintiff. Id. at 251.

On appeal, the Mississippi Supreme Court affirmed, reasoning that it had moved away from consumer expectations analysis in two 1988 decisions, Hall v. Mississippi Chem. Exp., Inc., 528 So.2d 796 (Miss. 1988), and Whittley v. City of Meridian, 530 So.2d 1341 (Miss. 1988). Prestage, 617 So.2d at 254-55. The court noted that most courts employ the risk-utility test, and that this standard protects both manufacturers and consumers by requiring that manufacturers make products that are reasonably safe under all circumstances, as opposed to absolutely safe unless the danger is facially apparent. Id. at 256. The court expressly rejected this court's conclusion in Melton, 887 F.2d at 1243, that Whittley had not altered the test for strict liability. Prestage, 617 So.2d at 255. The court held that an open and obvious danger was not an absolute bar to recovery. Id. at 256 n.4.

On April 19, 1993 Batts filed in the district court below a Rule 60(b)(6) motion, urging the court on the basis of Prestage to relieve him from the adverse judgment. See Batts II, 153 F.R.D. at 109. The district court granted Batts' motion, vacated the judgment in favor of Caterpillar, and restored the action to the court's active docket. Id. at 104, 109-10. The court stated that it had considered the factors of Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 402 (5th Cir. 1981), but did not explain how it had weighed any particular factor in reaching its decision. See Batts II, 153 F.R.D. at 109-10. It is otherwise clear from the district court's opinion, however, that the court granted Rule 60(b)(6) relief on the ground that it had applied the consumer expectations test at trial in March 1991, notwithstanding that Mississippi law had converted to the risk-utility test in 1988. Id. at 104

- 4 -

(holding "that the jury was improperly instructed on Mississippi products liability law when this case went to trial in March of 1991"), id. (recognizing "the retroactive rule of Prestage"), & 106-07 (observing that Prestage announced that Mississippi products liability law had changed in 1988).

The district court thereafter granted Caterpillar leave to take an interlocutory appeal of the order, and stayed all proceedings below. A panel of this court first denied, and later granted, leave to appeal.

Caterpillar asks us to reverse the order of the district court and reinstate the prior judgment in its favor.

## II

## A

Rule 60(b)(6) provides that a court may "relieve a party . . . from a final judgment . . . for . . . any other reason justifying relief from the operation of the judgment." Rule 60(b) sets out five specific bases for granting relief from a final judgment, followed by clause (b)(6). We have held that this clause's "'any other reason' language refers to any other reason than those contained in the five enumerated grounds on which a court may grant a Rule 60(b) motion." Government Fin. Servs. One Ltd. Partnership v. Peyton Place, Inc., 62 F.3d 767, 773 (5th Cir. 1995) (citing cases). Although we frequently have recognized that "'Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses,'" e.g., id. (quoting Harrel v. DCS Equip. Leasing Corp., 951 F.2d 1453 (5th Cir. 1992)), we have also narrowly circumscribed its availability, holding that Rule 60(b)(6) relief "will be granted only if extraordinary circumstances are present." Bailey v. Ryan Stevedoring Co., 894 F.2d 157, 160 (5th Cir.) (affirming order denying Rule 60(b)(6) motion based on change in federal law) (citing Ackermann v. United States, 340 U.S. 193 (1950)), cert. denied, 498 U.S. 829 (1990); Government Fin. Servs., 62 F.3d at 774; American Totalisator Co. v. Fair Grounds Corp., 3 F.3d 810, 815-16 (5th Cir 1993).

B

The district court granted Batts' Rule 60(b)(6) motion on the ground that the case had been tried under the consumer expectations test, when Mississippi had in fact converted earlier to the risk-utility test. See Batts II, 153 F.R.D. at 104, 106-07. We review the district court's decision for abuse of discretion. New Hampshire Ins. Co. v. Martech USA, Inc., 993 F.2d 1195, 1200 (5th Cir.1993).

At the time this case was tried, the law of this circuit--reiterated in 1989 in Melton--was that Mississippi followed the consumer expectations test. Melton was decided after the 1988 decisions in Hall and Whittley, which the Mississippi Supreme Court said in Prestage changed the state's products liability law. Prestage, 617 So.2d at 255. Subsequent to Melton no case was rendered that indicated that Melton's analysis of Mississippi law was incorrect. Batts I, 978 F.2d at 1393. In 1991 the district court was therefore obligated to try the case under the consumer expectations test, because it was bound by our interpretation of state law absent a subsequent state court decision or statutory amendment that rendered this court's prior decision clearly wrong. See Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 534 (5th Cir. 1994). Our affirmance of the district court's instructions based on the consumer expectations test makes pellucid that the trial court correctly followed state law as we had interpreted it. See Batts I, 978 F.2d at 1392-93.

The district court vacated the judgment in favor of Caterpillar on the basis of a change in decisional law announced after the 1991 trial and 1992 affirmance. In Bailey we stated that "[a] change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment."[3] Bailey, 894 F.2d at 160 (citing McKnight v. United States Steel Corp., 726 F.2d 333, 336 (7th Cir. 1984); Title v. United States, 263 F.2d 28, 31 (9th Cir.), cert. denied, 359 U.S. 989 (1959)).[4] Accordingly, because this change from the

---

[3]This statement is dicta because the panel had already held that Rule 60(b)(6) relief was unavailable to appellant because he had also sought relief on the basis of Rule 60(b)(5).

[4]In Picco v. Global Marine Drilling Co., 900 F.2d 846, 851 (5th Cir. 1990), we cited Bailey with approval in determining that it was an abuse of discretion for the district court to grant relief where the Supreme Court had changed the applicable rule of law.

- 6 -

consumer expectations test to the risk-utility test did not constitute an extraordinary circumstance sufficient to justify Rule 60(b)(6) relief, we hold that the district court abused its discretion when it granted Batts' motion and vacated the judgment. See id. at 160.[5]

C

We think a proper understanding of the limited circumstances in which post-judgment relief is available when decisional law changes, and of our role as an Erie court attempting to determine and apply state law, supports the conclusion that a change in state decisional law, rendered after this court makes an Erie prediction, will not normally constitute an extraordinary circumstance, and cannot alone be grounds for relief from a final judgment pursuant to Rule 60(b)(6).[6]

1

---

[5]Our decision in Satcher v. Honda Motor Co., 993 F.2d 56 (5th Cir. 1993), is not to the contrary. Although in Satcher we vacated our opinion after the Prestage decision was announced, we did so while the appeal was pending on rehearing. Id. at 57. The Mississippi Legislature had enacted House Bill 1270, codifying various elements of Mississippi common law regarding products liability, and the Mississippi Supreme Court had decided Prestage while the petition for rehearing in Satcher was still pending. Id. We held that these events, occurring after the panel decision but prior to a ruling on rehearing, had the potential to alter drastically Mississippi products liability law. Accordingly, we vacated and remanded so that the district court could address the parties' arguments and apply the new law to the facts of the case. Id. at 57-58.

[6]We do not hold that a change in decisional law can never be an extraordinary circumstance. Courts may find a special circumstance warranting relief where a change in the law affects a petition for habeas corpus, where notions of finality have no place. Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986) (denying relief where subsequent Supreme Court decisions indicated that change in law had not, in fact, occurred), cert. denied, 480 U.S. 908 (1987). Relief has also been found appropriate where the erroneous judgment has not yet been executed, where an appeal or remand of the case is still pending, or the judgment is not final. See Adams v. Merrill Lynch Pierce Fenner & Smith, 888 F.2d 696, 702 (10th Cir. 1989) (affirming district court grant of relief from judgment where Supreme Court altered law regarding arbitration of securities claims while claims were pending); Wilson v. Al McCord, Inc., 858 F.2d 1469, 1478-79 (10th Cir. 1988) (vacating and remanding where change in state law while appeal was pending made it neccesary for parties to develop more fully the factual record); Overbee v. Van Waters & Rogers, 765 F.2d 578, 580 (6th Cir. 1985) (holding on the basis of "the unique facts of this case" that district court abused its discretion in denying Rule 60(b)(6) relief where, at time plaintiff filed motion, judgment was not final, and action of Ohio Supreme Court of reversing itself within one year was certainly unusual). Rule 60(b)(6) may also warrant relief where the subsequent court decision is closely related to the case in question, such as where the Supreme Court resolves a conflict between another circuit ruling and that case. See, e.g., Ritter v. Smith, 811 F.2d 1398, 1402-03 (11th Cir.), cert. denied, 483 U.S. 1010 (1987). Similarly, where two cases arising out of the same transaction result in conflicting judgments, relief has been found to be warranted. See Pierce v. Cook & Co., 518 F.2d 720, 723 (10th Cir. 1975), cert. denied, 423 U.S. 1079 (1976).

"Numerous courts have held that the mere showing of a change in the law is not enough to demonstrate such an extraordinary situation when the judgment has become final." Overbee v. Van Waters & Rogers, 765 F.2d 578, 580 (6th Cir. 1985).

Absent some showing of extraordinary circumstances, courts have refused to vacate their prior judgments where they correctly applied federal law, and a subsequent Supreme Court ruling changed the law. See, e.g., Travelers Indem. Co. v. Sarkisian, 794 F.2d 754, 757 (2d Cir.) (denying Rule 60(b)(6) relief where Supreme Court reversed ruling on claims for indemnity under RICO statute after entry of final judgment), cert. denied, 479 U.S. 885 (1986). A party seeking relief under Rule 60(b) cannot simply cite a new Supreme Court decision to support its motion; it must present proof that enforcement of the judgment would work an injustice. DeFillipis v. United States, 567 F.2d 341, 344 (7th Cir. 1977), overruled in part on other grounds by United States v. Chicago, 663 F.2d 1354 (7th Cir. 1981). The required showing is substantial. See Dowell v. Board. of Educ. of Oklahoma City Pub. Sch., 8 F.3d 1501, 1509 (10th Cir. 1993). Even where the judgment provides injunctive relief, and thus has an ongoing effect, courts may refuse a Rule 60(b)(6) motion founded upon the Supreme Court's announcement of a new rule of law. Id.

Changes in decisional law based on constitutional principles are not of themselves extraordinary circumstances sufficient to justify Rule 60(b)(6) relief. For instance, in Collins v. City of Wichita, 254 F.2d 837 (10th Cir. 1958), a plaintiff challenged the constitutionality of a Kansas statute relating to the notice landowners received in condemnation actions. The plaintiff lost at trial and on appeal. Over one year later, the Supreme Court held the Kansas statute unconstitutional and plaintiff sought relief from the adverse judgment. The Tenth Circuit affirmed the district court's denial of the motion, finding that "a judicial change in the court's view of the law after its entry, does not justify setting it aside." Id. at 839.

A circuit court's announcement of a new rule of federal law, like a Supreme Court pronouncement, is similarly insufficient without more to justify Rule 60(b)(6) relief. See Ashland Oil, Inc. v. Delta Oil Prods. Corp., 806 F.2d 1031, 1033-34 (Fed. Cir. 1986) (denying relief where no

evidence presented that continued operation of judgment would cause unjust result). In <u>Tomlin v. McDaniel</u>, 865 F.2d 209 (9th Cir. 1989), for example, plaintiff's 42 U.S.C. § 1983 action was dismissed pursuant to a Ninth Circuit ruling that the statute of limitations for such suits was one year. After the Supreme Court denied plaintiff's petition for a writ of certiorari, the circuit court held in <u>Stephan v. Dowdle</u>, 733 F.2d 642 (9th Cir. 1984), that imprisonment tolled the statute. The Supreme Court announced in <u>Wilson v. Garcia</u>, 471 U.S. 261 (1985), that the limitations period should be equal to that for state personal injury actions. Under either case, plaintiff's action would have been timely. In affirming the district court's denial of plaintiff's motion for Rule 60(b)(6) relief, the court stated, "[plaintiff] appealed and the judgment against him became final <u>before</u> the laws changed. That is the rock on which his arguments founder." <u>Tomlin</u>, 865 F.2d at 211.

2

Our role as an <u>Erie</u> court strengthens, rather than undermines, the proposition that a change in decisional law is insufficient to constitute an extraordinary circumstance. "In diversity cases, we apply substantive state law." <u>Rogers v. Corrosion Prods., Inc.</u>, 42 F.3d 292, 295 (5th Cir.), <u>cert. denied</u>, ___ U.S. ___, 115 S.Ct. 2614 (1995). Our position is analogous to a state intermediate court. <u>Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.</u>, 953 F.2d 985, 988 (5th Cir. 1992). "This court is <u>Erie</u>-bound to apply state law as it currently exists, and may not change that law or adopt innovative theories of recovery." <u>Solomon v. Walgreen Co.</u>, 975 F.2d 1086, 1089 (5th Cir. 1992) (per curiam) (citing cases).

"In order to determine state law, federal courts look to final decisions of the highest court of the state. When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." <u>Labiche v. Legal Sec. Ins. Co.</u>, 31 F.3d 350, 351 (5th Cir. 1994) (per curiam) (quoting <u>Transcontinental</u>, 953 F.2d at 988). "In deciding an unsettled point of [Mississippi] state law, <u>Erie</u> requires that we determine how the Mississippi Supreme Court would interpret its own law if presented with the question." <u>Lawrence v. Virginia Ins. Reciprocal</u>, 979 F.2d 1053, 1055 (5th Cir. 1992) (citing <u>American Waste & Pollution</u>

Control Co. v. Browning-Ferris, Inc., 949 F.2d 1384, 1386 (5th Cir. 1991)); Batts I, 978 F.2d at 1389. "When we are required to make an Erie guess, it is not our role to create or modify state law, rather only to predict it. Lawrence, 979 F.2d at 1055; Batts I, 978 F.2d at 1389.

The general rule that a change in decisional law will not ordinarily warrant Rule 60(b)(6) relief has greater force in an Erie case because in this context a federal court is doing no more than fulfilling its obligation scrupulously to determine how a state court would decide a question. We find the Second Circuit's well-reasoned opinion in DeWeerth v. Baldinger, 38 F.3d 1266 (2d Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 512 (1994), to be particularly instructive.

Erie requires that diversity courts follow state law on substantive matters not governed by the Constitution or by federal law. Id. at 1272. The court is not required to be prescient. Instead, "[w]hen confronted with an unsettled issue of state law, a federal court sitting in diversity must make its best effort to predict how the state courts would decide the issue." Id. at 1273. Erie and its progeny require no more of a federal court than conscientiously to satisfy its duty to predict how the state court will decide a question. See id. at 1274.

"However, the fact that federal courts must follow state law when deciding a diversity case does not mean that a subsequent change in the law of the state will provide grounds for relief under Rule 60(b)(6)." Id. at 1272-73. Erie contemplates that on any open question of state law, a federal as opposed to a state court will determine the applicable rules of law. See id. at 1273. That a subsequent state court resolves the question differently does not render the federal diversity court decision invalid, or mar the proceeding as unfair. Id.

> The very nature of diversity jurisdiction leaves open the possibility that a state court will subsequently disagree with a federal court's interpretation of state law. However, this aspect of our dual justice system does not mean that all diversity judgments are subject to revision once a state court later addresses the litigated issues. Such a rule would be tantamount to holding that the doctrine of finality does not apply to diversity judgments, a theory that has no basis in Erie or its progeny.

Id. at 1273-74.

Consistent with the reasoning and result of DeWeerth are cases such as Dowell v. State Farm

Fire and Cas. Auto Ins. Co., 993 F.2d 46 (4th Cir. 1993), and Seese v. Volkswagenwerk, A.G., 679 F.2d 336 (3d Cir. 1982). In Dowell the Fourth Circuit affirmed the district court's denial of a Rule 60(b) motion where a plaintiff sought relief on the basis of a West Virginia Supreme Court ruling that changed the uninsured motorist law. Analyzing the motion under both Rule 60(b)(5) and (6), the Fourth Circuit held, in relevant part, that "a change in decisional law subsequent to a final judgment provides no basis for relief under Rule 60(b)(6)." Id. at 48. The Third Circuit held in Seese that after the court of appeals affirms a judgment and the Supreme Court denies a petition for a writ of certiorari, the case is no longer sub judice, and a Rule 60(b)(6) motion provides no basis for relief. Seese, 679 F.2d at 337. The court affirmed the district court's denial of a defendant's Rule 60(b)(6) motion, which was based on a Fourth Circuit ruling that North Carolina would not recognize the negligent design theory upon which the plaintiff had recovered. The Third Circuit rejected the argument that Erie required that it apply the new law to a case no longer sub judice. Id. It quoted with approval the district court's opinion, in which the court stated that, "Even if it were true. . . that we have incorrectly guessed as to what North Carolina law would ultimately be, that would not be cognizable under Rule 60 at this time." Id.

D

Batts emphasizes that this case presents an extraordinary circumstance because he requested that this court stay the appeal in Batts I pending the Mississippi Supreme Court's anticipated ruling in Prestage. We find nothing in the district court's opinion to indicate that it exercised its discretion on the basis of Batts' motion for a stay of the appeal. The district court's opinion does not mention the request. Instead, as we have noted, the court below granted relief on the ground that it had incorrectly instructed the jury concerning the consumer expectations test, which had been replaced by the risk-utility test three years prior to the Batts trial. Because we are reviewing the district court's decision under an abuse of discretion standard, and since this factor apparently played no role in the court's exercise of its discretion, we hold that Batts' request for a stay does not change our

analysis.[7]

* * *

Batts did not present an extraordinary circumstance that warranted Rule 60(b)(6) relief. The district court therefore abused its discretion in granting Batts' motion. The order vacating the final judgment below is therefore

REVERSED.

---

[7]Batts also relies on <u>Pierce</u>, in which the Tenth Circuit granted relief from summary judgment where the state law precedent upon which the district court relied was subsequently overruled. <u>Pierce</u> presented extraordinary circumstances in that separate state and federal actions arose from the same incident and involved the same parties. In <u>DeWeerth</u>, 38 F.3d at 1274-75, the Second Circuit distinguished <u>Pierce</u> on grounds with which we agree.