## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 96-CA-00903-SCT

***BETTY JANE BRINEY, THE SUCCESSOR
ADMINISTRATRIX OF THE ESTATE OF JOY MARIE
MANUEL, DECEASED***

***v.***

***UNITED STATES FIDELITY & GUARANTY
COMPANY***

| | |
|---|---|
| DATE OF JUDGMENT: | 07/16/96 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN ROBERT WHITE |
| ATTORNEYS FOR APPELLEE: | KIMBERLY R. HERRING |
| | THOMAS Y. PAGE |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 6/4/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/25/98 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The Hinds County Circuit Court denied a Motion To Vacate Order Allocating Settlement Amounts brought by Betty Briney, the Successor Administratrix of the estate of Joy Manuel, based on the finding that the motion was not made within a reasonable time. To the contrary, we find that the motion was made within a reasonable time and Rule 60(b)(6) provides the authority for us to reverse and remand the denial of Briney's motion to vacate the Order in order to promote the ends of justice.

¶2. The Order Briney is seeking to have vacated resulted from a personal injury claim and a wrongful death action brought on behalf of Joy Manuel who died as a result of a motor vehicle accident on March 1, 1990, in Terry, Mississippi. Both Joy and Donald Manuel were residents of the State of California. The presumed husband of Joy, Donald Manuel, brought an action seeking damages for his own personal injuries and for his wife's wrongful death resulting from the accident. After discovery

was conducted, a question arose about the validity of Donald and Joy's marriage and a motion for partial summary judgment was filed by both defendants raising this issue. After an estate was opened for Joy Manuel with a County Administrator appointed as Administratrix of her estate, the complaint was amended on July 2, 1992, and filed by both Donald and Joan Salter, the Administratrix of Joy's estate.

¶3. During the pendency of the litigation, United States Fidelity & Guaranty Co. (hereafter USF&G), the worker's compensation insurer of Hawkeye Refrigerated Service Corp., the employer of Donald and Joy at the time of the accident, filed a notice of lien under Iowa Code Section 85.22 for compensation and death benefits that were paid to Donald. It was established that USF&G had paid Donald $117,930.00 in compensation benefits and $38,866.34 in death benefits as Joy's surviving spouse. An Order permitting USF&G to intervene in the suit was signed on April 6, 1993, and USF&G filed its complaint on May 5, 1993, seeking to exercise its lien for workers' compensation benefits paid under Iowa law.

¶4. On the morning of trial on May 10, 1993, one of the defendants, Lavergne Transport, Inc, announced it had reached a settlement in the amount of $40,000 and on the morning of the fourth day of trial the plaintiffs, Donald and Salter, informed the court that they had agreed to settle the case with the other defendant, Geiselbreth, for the total sum of $150,000. On August 11, 1993, the Chancery Court of Hinds County, Mississippi, entered an Order approving the settlement of the doubtful claim for the wrongful death of Joy Manuel. Salter was ordered to request the circuit court to allocate an appropriate amount of settlement funds to Joy's estate. She was further ordered to receive the funds from the registry of the Circuit Court and hold funds until further order by the chancery court concerning the distribution of the funds. On November 24, 1993, the circuit court entered its Order Allocating Settlement Amount which is summarized in the following chart.

| SETTLEMENT | TO DONALD MANUEL | TO ESTATE OF JOY MANUEL |
|---|---|---|
| LAVERGNE | $20,000.00 | $ 20,000.00 |
| GEISELBRETH | $50,000.00 | $100,000.00 |
|  | $70,000.00 | $120,000.00 |
|  |  |  |
| DISTRIBUTION | TO DONALD MANUEL | TO ESTATE OF JOY MANUEL |
|  | $70,000.00 | $120,000.00 |
| Attorneys' Fees | -28,000.00 | - 48,000.00 |
| Expenses | -11,628.59 | - 7,949.67 |
|  | $30,371.41 | $64,050.33 |
|  |  |  |
| TO: USF&G | -30,371.41 | -38,866.34 |
|  | 00.00 | $25,866.34 |

The balance of $25,866.34 was paid into the registry of the Hinds County Chancery Court and process was issued to Donald, Joy's father, mother, sisters, and brothers for a determination of Joy's rightful heirs.

¶5. The case to determine Joy's rightful heirs for purposes of determining who is entitled to the proceeds of the wrongful death settlement was tried on May 30, 1995. The case resulted in an order that determined that the marriage between Joy and Donald was void *ab initio* because Joy had still been legally married to James Anderson at the time of her marriage to Donald, and that Joy Manuel's sole heirs are Joy's mother, father, and siblings. Subsequently on February 23, 1996, the Chancery Court issued an Order appointing Joy's mother, Betty Briney, as Successor Administratrix to the estate of Joy Manuel. On March 6, 1996, Briney filed her motion in the Circuit Court of Hinds County, Mississippi to vacate the Order Allocating Settlement Amounts that was entered on November 24, 1993. The motion alleged that it was unlawful under Iowa law to allow USF&G to satisfy a portion of its lien against Donald Manuel by paying USF&G the sum of $38,866.34 from the proceeds rightfully belonging to the estate of Joy Manuel when the estate never received any money from USF&G. Instead of deciding whether to vacate the Order based on the merits of the case, Judge Gibbs found that the motion was controlled by Rule 60(b) of the Mississippi Rules of Civil Procedure and entered an Order on July 16, 1996, denying Briney's motion finding that it was not timely filed. The Court specifically stated, "that the Successor Administratrix has shown no basis for a three year delay in attacking the Order of this Court." Aggrieved of that decision, Briney perfected this appeal.

## STATEMENT OF THE LAW

### I. MAY USF&G SATISFY ITS SUBROGATION LIEN AGAINST DONALD MANUEL BY TAKING MONEY FROM JOY MANUEL'S ESTATE, TO WHICH IT NEVER PAID ANY MONEY?

¶6. Briney argues that under Iowa law, USF&G had no right of subrogation from Joy's estate since USF&G paid no money to the estate. She argues that the effect of allowing USF&G to take $38,866.34 from the settlement proceeds allocated to Joy's estate as partial repayment of benefits it paid to Donald Manuel was to take money away from the rightful heirs who never received any money from USF&G. USF&G claimed its rights to subrogation under Iowa Code Ann. § 85.22 (West 1996). This section in relevant part states:

> 1. If compensation is paid the employee or dependent or the trustee of such dependent under this chapter, the employer by whom the same was paid, or the *employer's insurer which paid it, shall be indemnified out of the recovery of damages to the extent of the payment so made . . .*and shall have a lien on the claim for such recovery and the judgment thereon for the compensation for which the employer or insurer is liable.

Iowa Code Ann. § 85.22 (West 1996) (emphasis supplied). Briney cites to two Iowa Supreme Court cases which interpret this language. The Iowa Supreme Court held "that the employer's right to withhold benefits under section 85.22(1) extends only to that portion of the wrongful death proceeds actually paid or legally available to the person entitled to receive the workers' compensation benefits." *Bertrand v. Sioux City Grain Exch.*, 419 N.W. 2d 402, 404 (Iowa 1988). The Court went on to state, "[T]he better rule is that an employer can only reach that portion of a third-party recovery

which the workers' compensation dependent is entitled to receive." *Id.* at 405. Therefore, the Court did not allow the employer to reach the part of the recovery that was to go to the deceased's four children who never actually received any benefits under workers' compensation. The other Iowa case Briney cites in support of her contention that USF&G was unlawfully allowed to receive money out of Joy's estate is *Mata v. Clarion Farmers Elevator Cooperative*, 380 N.W.2d 425 (Iowa 1986). Although the *Mata* case interprets a different subsection of Section 85.22 of the Iowa Code, the *Bertrand* Court interpreted the *Mata* decision to indicate that "the employer would have no right to the portion of the settlement allocable to the wife and child" on the loss of consortium claim. *Bertrand*, 419 N.W.2d at 405 (*citing Mata v. Clarion Farmers Elevator Coop.*, 380 N.W.2d 425, 429 (Iowa 1986)). The *Mata* Court found that a workers' compensation lien is valid as to the portion of the settlement found allocable to the injured employee. *Mata*, 380 N.W.2d at 429.

¶7. When considering this case law of the Iowa Supreme Court, it follows that the money received by USF&G out of the proceeds allocated to Joy's estate for satisfaction of the subrogation lien for the death benefits paid to Donald was unlawful under controlling Iowa Law. As cited by Briney, 83 C.J.S. Subrogation § 14 (1953) explains that a person entitled to subrogation stands in the shoes of the one from whom his right to subrogation arose and cannot ascend to any greater right than the one for whom he is substituted.

¶8. USF&G does not challenge the contention that Iowa law may have been misapplied, but instead it argues that it was proper to have paid the death benefits to Donald based on the strong presumption of the validity of a marriage solemnized according to law citing *Smith v. Weir*, 387 So. 2d 761 (Miss. 1980) and *Paschall v. Polk*, 379 So. 2d 316 (Miss. 1980). This issue is not in dispute. However, USF&G does argue that the circuit court is the one who decided how the settlement proceeds were to be distributed and the estate was represented by a duly appointed Administratrix. It contends that all parties including the Administratrix had 30 days to appeal the court's Order if they believed the court's Order was in error but no parties appealed the Order and Joy's heirs cannot argue that the estate was not represented at the time of the Order. Neither Betty nor Joy's other rightful heirs were parties to the Circuit Court action, and therefore had no right to appeal. They were entitled to rely upon the Circuit Court to properly apply the law with regard to the settlement proceeds allocable to Joy's estate.

¶9. In Briney's reply brief, she argues that at the time the Order was entered, there was no reason for the Administratrix to appeal because Donald was presumed to be the surviving spouse and sole heir of Joy's estate. It is also important to note that neither Briney nor any other potential heirs to Joy's estate were notified by the Court, Donald's attorney or USF&G. According to Briney's affidavit, the only knowledge Briney had about the pending wrongful death claim was obtained by an insurance investigator and that Donald told the investigator that he did not know how to contact Joy's family. Briney also argues that USF&G knew if it did not take the $38,866.34 before the rightful heirs were adjudicated, it might get nothing from the estate funds once the rightful heirs were determined. Another important fact this Court considers is that the same counsel who represented Donald also represented the estate of Joy Manuel, deceased, and could have influenced the decision of the Administratrix not to appeal. This is especially true when considering the strong presumption that Donald was Joy's husband, and under Mississippi's wrongful death statute, Section 11-7-13 of the Mississippi Code of 1972, Donald would be the only person entitled to the estate's proceeds.

¶10. Another concern this Court has is the fact that Joy Manuel had a daughter who was adopted. This child was in no way informed of the pending litigation nor were her rights protected in any manner by any party. There is no indication in the record that anyone, including the heirs determined in the chancery court proceedings, tried to locate this child. In Briney's affidavit she explains that "Donald Manuel knew that Joy had given up a daughter in adoption. Other family members of my family know where the child lives, and the address could have been found." However when Salters, appointed Admistratrix, filed the petition seeking adjudication of the Heirs-at-Law of Joy Manuel the minor child was listed as adopted at birth, name and address unknown. Also at the time that Salters was appointed Administratrix, she failed to make the court aware of other potential heirs. Although this child was adopted, it does not cut off her right of inheritance unless the provisions of the adoption clearly so state or the law of another state controls this particular issue. *Estate of Jones v. Howell*, 687 So. 2d 1171 (Miss. 1996) (right to bring wrongful death action for natural father's death was not terminated at time of adoption). This Court has held that, "an administratrix is under an affirmative duty to disclose to this Court the existence of known potential heirs and claimants." *Smith v. Estate of King*, 501 So. 2d 1120, 1123 (Miss. 1987).

¶11. As pointed out by Briney, simply because the time for appeal has expired, Rule 60 recognizes that relief may be sought after the time for appeal has expired given the right circumstances citing *Accredited Surety. & Casualty. Company v. Bolles*, 535 So. 2d 56, 58-59 (Miss. 1988).

## II. WAS BETTY BRINEY'S RULE 60(b)(6) MOTION TO VACATE THE TRIAL JUDGE'S NOVEMBER 24, 1993, ORDER MADE WITHIN A REASONABLE TIME?

¶12. Rule 60(b) of the Mississippi Rules of Civil Procedure provides the grounds for which a judgment or order may be set aside. That rule in pertinent part, reads as follows:

> **RULE 60. RELIEF FROM JUDGMENT OR ORDER**
>
> (b) **Mistakes; Inadvertence; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (2) accident or mistake;
>
> (6) *any other reason justifying relief from the judgment.*
>
> *The motion shall be made within a reasonable time,* and for reasons (1), (2) and (3) not more than six months after the judgment, order, or proceeding was entered or taken.

Miss.R.Civ.P. 60(b) (emphasis supplied). The Fifth Circuit has held that "this clause's "any other reason' language refers to any other reason than those contained in the five enumerated grounds on which a court may grant a Rule 60(b) motion.'" *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5ᵗʰ Cir. 1995) (*quoting* *Government Fin. Servs. One Ltd. Partnership v. Peyton Place, Inc.*, 62 F.3d 767, 773 (5th Cir.1995)). Neither party argues that there is any other authority for vacating the 1993 Order other than Rule 60(b)(6). Relief under Rule 60(b)(6) is reserved for extraordinary and compelling circumstances. *Sartain v. White*, 588 So.2d 204, 212 (Miss. 1991); *State v. One (1)*

*Chevrolet Nova Auto.*, 573 So. 2d 787, 790 (Miss. 1990). This Court has pointed to "this catch-all [Rule 60(b)(6)] as a 'grand reservoir of equitable power to do justice in a particular case . . . .'" *Burkett v. Burkett*, 537 So. 2d 443, 445 (Miss. 1989) (*quoting* **Bryant, Inc. v. Walters**, 493 So. 2d 933, 939 (Miss. 1986)); *See also* **Lose v. Illinois Cent. Gulf R.R.**, 584 So. 2d 1284, 1286 (Miss. 1991).

¶13. Regarding the standard of review this Court must employ when considering the grant or denial of a 60(b)(6) motion, this Court will not reverse unless convinced that the Circuit Court has abused its discretion. *Burkett*, 537 So. 2d at 446. "Generally, consideration of a Rule 60(b) motion requires that a 'balance . . . be struck between granting a litigant a hearing on the merits with the need and desire to achieve finality.'" *Lose*, 584 So. 2d at 1286 (*quoting* **Stringfellow v. Stringfellow**, 451 So. 2d 219, 221 (Miss. 1984)).

¶14. Briney correctly points out that Rule 60(b) of the Mississippi Rules of Civil Procedure is almost exactly the same as the Federal Rule 60(b) and "this court [sic] will consider as authoritative federal constructions when determining what our construction of our rule ought to be." *One (1) Chevrolet Nova Auto.*, 573 So. 2d at 789 (*citing* **Stringfellow v. Stringfellow**, 451 So. 2d 219, 221 (Miss. 1984)). Therefore, Briney cites to **Heirs-at-Law & Beneficiaries of Gilbert v. Dresser Industries, Inc.,** 158 F.R.D. 89 (N.D. Miss. 1993) in support of her contention that the point of time from which reasonableness is judged is the time that the basis for the Rule 60(b) motion becomes known to the moving party. In that case the district court quoted with approval from Wright & Miller, Federal Practice & Procedure which offers the following rationale:

> What constitutes reasonable time must of necessity depend upon the facts in each individual case. The Courts consider whether the party opposing the motion has been prejudiced by the delay in seeking relief and whether the moving party has some good reason for his failure to take appropriate action sooner.

*Heirs-at-Law of Gilbert*, 158 F.R.D. at 96 (*quoting* 11 Wright & Miller, Federal Practice & Procedure 2866). Briney argues that the point of time from which reasonableness should have been judged was October 30, 1995, the date the chancery court adjudicated Joy's legal heirs. In *Heirs-at-Law of Gilbert*, the district court relied in part on the fact that the plaintiffs had continually asserted what they believed to be the controlling law as to the merits of the case when it held that the Rule 60(b) motion was timely filed although one year and two months had elapsed since the summary judgment. *Id.* at 95-96. "Rule 60(b) is not an escape hatch for litigants who had procedural opportunities afforded under other rules and who without cause failed to pursue those procedural remedies . . . ." *One (1) Chevrolet Nova Auto.*, 573 So. 2d at 790.

¶15. Briney contends that until the chancery court determined that Donald and Joy's marriage was void ab initio and therefore Donald was not the rightful heir to Joy's estate, she did not have standing to intervene or to challenge the November 24, 1993 Order. She argues this is because the top echelon under the wrongful death statute Miss. Code Ann. § 11-7-13 (Supp. 1997) is reserved for the spouse and child of the deceased citing *Partyka v. Yazoo Dev. Corp.*, 376 So. 2d 646 (Miss. 1979) (affirming the trial court's dismissal of a wrongful death action by deceased mother because the wife survived the husband by thirty minutes and the wife's right as sole heir passed to her estate) and *Fillingame v. Patterson*, 704 F. Supp. 702 (S.D. Miss. 1988) (holding that the two natural children,

regardless of previous adoption, were the only people who could bring a wrongful death action, excluding all other surviving relatives). Therefore, Briney argues that she lacked standing to interfere or intervene with the wrongful death action filed by Donald, since he was presumed to be the sole heir and in the top echelon of wrongful death beneficiaries. Briney argues that within two weeks after she was appointed Successor Administratrix she filed her motion to vacate the settlement order and the date of her appointment on February 23, 1996, is the date in which the Court should determine "reasonable time."

¶16. The circuit judge, when denying her motion, specifically found that:

> [T]he Successor Administratrix was aware of Don Manuel's prosecution of the action and chose not to assert her rights at that time. The Final Order was a reflection of the fact that all aspects of the case were addressed between all parties, including USF&G and the appointed Administratrix of Joy Manuel's Estate. Furthermore, the new Administratrix testified that she sought the advice of attorney after she learned of Don Manuel's prosecution of the action, but her reason for not following up on the issue was because she did not know how to arrange for an out-of-state attorney.

> The Court is of the opinion that the Successor Administratrix has shown no basis for a three year delay in attacking the Order of this Court.

¶17. USF&G contends that Briney could have petitioned the chancery court to remove Salters as Administratrix of Joy's estate and appoint herself. This is exactly what happened in *Matter of Estate of Moreland*, 537 So. 2d 1337 (Miss. 1989) as cited by USF&G. In *Moreland*, a mother of a decedent was originally appointed as Administratrix of her son's estate in order to bring a wrongful death action. The decedent's ex-wife, who was responsible for the care of the couple's minor child, petitioned the court to remove the mother and appoint herself instead. The ex-wife was successful in her petition and she was substituted as the new Administratrix and was allowed to proceed with the wrongful death action. *Moreland*, 537 So. 2d at 1341. USF&G further argues that Briney did not have to wait for Don Manuel to originate the wrongful death proceeding but could have brought it herself by applying to the chancery court for letters of administration pursuant to § 91-7-63 of the Mississippi Code of 1972. This argument would be more persuasive if Briney and other potential heirs were officially notified of the pending wrongful death action and the need for an estate to be opened in order to maintain the wrongful death cause of action. This was not done. In addition, in contrast to the facts of the *Moreland* case, Briney and Joy's other heirs, with the exception of the adopted child, were not in the top echelon of beneficiaries under Mississippi's wrongful death statute. Miss. Code Ann. § 11-7-13 (Supp. 1997).

¶18. Briney asserts that in *Moreland* the mother of the deceased was in the second echelon of wrongful death beneficiaries and she was removed because the ex-wife was acting on behalf of the decedent's minor son who is in the top echelon of wrongful death beneficiaries. Briney strongly relies on the fact that Donald was presumed to be the sole beneficiary in the first echelon of wrongful death beneficiaries given the presumption that the marriage between Donald and Joy was valid citing *Jeffreys v. Clark*, 251 Miss. 129, 149, 168 So. 2d 662 (1964) (holding that "the presumption of the validity of a marriage solemnized according to law is superior to the presumption of life, and the presumption arising from a subsequent marriage that a prior marriage has been dissolved is one of the

strongest presumptions known to law and will prevail unless overcome by confident evidence to the contrary . . . ."), overruled on other grounds by *Sheffield v. Sheffield*, 405 So. 2d 1314 (Miss. 1981) . A County Administrator is granted letters of administration when "some person has not applied for letters testamentary or of administration." Miss. Code Ann. § 91-7-79 (1994). No formal notice was given to Joy's heirs about the estate until February 9, 1994, after the settlement in the wrongful death action was final and USF&G had received the funds unlawfully awarded to it. When looking at Briney's affidavit dated May 3, 1994, Briney knew that shortly after Joy's marriage to Donald that her prior marriage had not been dissolved, and she also had knowledge of Joy's child who was adopted by another who shares the top echelon under Mississippi's wrongful death statute. Miss. Code Ann. § 11-7-13 (Supp. 1997). This child also was not informed about the wrongful death action nor was she informed about the proceeding in chancery court to determine the rightful heirs of Joy Manuel.

¶19. This Court finds that Briney did file her motion to vacate the order within a reasonable time when she filed her motion eleven days after being substituted as the administratrix of Joy's estate. The Petition for Appointment of Administratrix was filed June 29, 1992 by Donald's attorney. No notice was given to Joy's heirs about the estate until February 9, 1994, after the circuit court action had been concluded. It was not until October 30, 1995, the date the chancery court adjudicated Joy's legal heirs and determined that Joy's ceremonial marriage to Donald had been void *ab initio* that Joy had standing to file her petition.

¶20. Both parties address the factors listed by the United States District Court that should be considered when deciding if relief should be granted under Rule 60(b). The United States District Court, set out the following factors:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) [relevant only to default judgments]; (6) whether--if the judgment was rendered after a trial on the merits--the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Batts v. Tow-Motor Forklift Co.*, 153 F.R.D. 103, 109 (N.D. Miss. 1994) (*quoting Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981)) *rev'd*, 66 F.3d 743 (5th Cir. 1995) (reversing because a change in state decisional law after an Erie prediction does not constitute extraordinary circumstances and cannot by itself allow relief from a final judgment). These factors are consistently followed. *See United States v. Flores*, 981 F.2d 231, 237 (5th Cir.1993); *Barrs v. Sullivan*, 906 F.2d 120, 121 (5th Cir.1990); *Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 849 (5th Cir.1990); *Smith v. Alumax Extrusions, Inc.,* 868 F.2d 1469, 1471 (5th Cir.1989); *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir.1988).

¶21. When balancing each of these factors, we find that the action taken by the trial court in the case at bar was erroneous and is reversed and remanded. Although the 1993 Order was a final judgment and should not lightly be disturbed, there is nothing light about Briney's request to correct a legal error that allowed USF&G to wrongfully take $38,866.34 properly belonging to the rightful heirs of Joy's estate. Although the Administratrix of Joy's estate had every right to appeal the Order if it

believed that the trial court misapplied the controlling law, there was a rebuttable presumption that Donald was Joy's rightful heir. When considering the facts of this case, Rule 60 is not being used as a substitute for appeal. There must be a balance between substantial justice and finality of judgments and substantial justice will only be served if the money rightfully belonging to Joy's heirs is returned to them. We have already determined that Briney did file her motion within a reasonable time, given the fact that she did not have standing to challenge the order of the circuit court until she was appointed the Successor Administratrix. At that time she acted both diligently and promptly in filing her petition. We are also mindful of the equitable purpose of Rule 60. This Court stated:

> We must keep in mind the equitable purpose of Rule 60 as well as the spirit by which procedural rules must be interpreted. The "primary purpose" of our Rules of Civil Procedure is to "secure the just . . .determination of every action" and "promote the ends of justice." Miss.R.Civ.P. 1, Comment.

*Accredited Sur. & Cas. Co.*, 535 So. 2d at 59. Once again we recognize that Rule 60 (b)(6) "stands as a 'grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses, or when it is uncertain that one or more of the preceding clauses afford relief.'" *Accredited Sur. & Cas. Co.*, 535 So. 2d at 60 (*quoting* **Bryant, Inc. v. Walters**, 493 So. 2d 933, 939 (Miss. 1986)). In this case, justice cannot be promoted and a just determination of the action cannot be accomplished by allowing USF&G to keep $38,866.34 to which it is not entitled. As a result, we find that the lower court erred when it denied the petition seeking to vacate the circuit court's Order that unlawfully allowed USF&G to satisfy a portion of its subrogation lien against Donald by taking from the proceeds allocated to Joy's estate when USF&G never paid any money to Joy's estate.

## CONCLUSION

¶22. Briney has a valid argument on the merits of the case concerning USF&G's right to subrogation against the estate. The trial judge abused his discretion when he denied the motion finding that the Successor Administratrix showed no basis for a three year delay in attacking the Order. Briney did file her motion within a reasonable time because the time from which this inquiry begins is the date that Briney had legal standing to challenge the circuit court's order.

¶23. This is one of those rare cases with most extraordinary circumstances that compels us to find that the circuit court's order must be vacated.

¶24. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE AND WALLER, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND MILLS, JJ.**

**SMITH, JUSTICE, DISSENTING:**

¶25. In my view the trial judge did not abuse his discretion in denying the motion of the Successor Administratrix, Briney, for the reason that no basis for a three year delay in attacking the lower court's order was shown. Nor, is the case sub judice, rare or extraordinary to warrant vacating the lower court's order after such a lengthy delay. The bottom line here is simply that Briney did not have to wait until she was appointed as Successor Administratrix in order to challenge the circuit court's order. She could have done so long before the final order was entered by the lower court.

¶26. This is exactly what occurred in *Estate of Moreland,* 537 So. 2d 1337 (Miss. 1989). There, a decedent's ex-wife, who was solely responsible for the care of the couple's minor child, learned that the decedent's mother had been appointed Administratrix of her son's estate, so the ex-wife petitioned the chancery court to have the mother removed as administratrix and was appointed as a substitute by the chancellor. This Court affirmed the chancellor's actions. Here, Briney clearly could have filed to be appointed successor administratrix at a much earlier stage rather than waiting until the lower court concluded that Joy Manuel's marriage to Don Manuel was void. The majority attempts to distinguish *Moreland* by claiming that no legal notice was provided to Briney or other relatives of Joy. However, Briney was fully aware of the events occurring in the case. One need only examine Briney's affidavit of May 3, 1994, where she admits that shortly after Joy's marriage to Don Manuel that she knew that Joy's prior marriage had not been dissolved. Briney was also aware of the adoption of Joy's child by another. Also, Briney's affidavit establishes that she was fully aware of the pendency of this action and even consulted counsel regarding this issue at a substantial time prior to the conclusion of the litigation at issue here. She later learned who the attorneys were who were pursuing the litigation. Briney failed to timely assert her rights, with complete knowledge of the circumstances at hand. A person may not ignore procedural opportunities afforded under the law, and thereafter, rely upon the catch all provision of Rule 60 to attempt to challenge an order after the fact. This Court, in *State ex rel. Mississippi Bureau of Narcotics v. One Chevrolet Nova Automobile*, 573 So. 2d 787 (Miss. 1990), stated:

> Rule 60(b) is not an escape hatch for litigants who had procedural opportunities afforded under other rules and who without cause failed to pursue those procedural remedies. "Rule 60 (b) is designed for the extraordinary, not the common place."

*One (1) Chevrolet Nova,* 573 So. 2d at 790 (citations omitted).

¶27. In my view, there is nothing extraordinary nor uncommon in the case at bar. Briney consulted an attorney two years prior to the action being concluded by the prior Administratrix and she waited three years after the final order was entered by the circuit court to ever attempt any action on this case. She was fully aware of the proceedings as they were filed and progressed. She was even aware of who the attorneys were representing Don Manuel in the original cause. USF&G had every right to rely upon the original adminstratrix and the finality of the circuit court's order and to negotiate the checks issued by the clerk of the circuit court. Three years after the entering of the circuit court order is too far removed as a reasonable time frame to allow the catch all of Rule 60(b)(6) to be utilized. In fact, this Court has never allowed such action where such a delayed time frame exists.

¶28. I respectfully dissent.

**ROBERTS AND MILLS, JJ., JOIN THIS OPINION.**